JOHN J. BREEN, PLAINTIFF-APPELLANT, v. HARRY G. PECK, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 25, 1957—Decided December 20, 1957.

162

Before Judges CLAPP, JAYNE and SCHETTINO.

*Mr. William E. Sandmeyer* argued the cause for plaintiff-appellant.

*Mr. Aaron W. Nussman* argued the cause for defendant-respondent (*Mr. Maurice S. Austin,* attorney).

The opinion of the court was delivered by

CLAPP, S. J. A. D.   In *Adolph Gottscho, Inc. v. American Marking Corp.,* 18 *N. J.* 467, 470–471 (1955), the Supreme Court expressed its disapprobation of the common law rule that a release of one joint tortfeasor, stated in absolute terms, automatically discharged his co-tortfeasors.   The court then went on to make this pronouncement:

"Dean Prosser * * * forcefully suggests the desirable rule to be 'that a plaintiff should never be compelled to surrender his cause of action against any wrongdoer unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to maintain it.'"   See *Prosser, Torts (2d ed.),* 245.

The appellant here invokes the approved rule, which was apparently not followed by the court below.

The matter comes before us upon an appeal by the plaintiff from a summary judgment, dismissing his complaint. Plaintiff is a real estate broker who had been engaged by Norman Levine to sell certain property of Levine's located in Teaneck.   He interested defendant in the property; Levine then withdrew it from the market, selling it to defendant after waiting a year.   Learning of the sale, plaintiff made a demand upon Levine for commissions.   After extensive litigation (involving two trials and one appeal, *Breen v. Levine,* 32 *N. J. Super.* 525 (*App. Div.* 1954)), Levine ultimately paid plaintiff $900 in exchange for a

general release under seal, running in Levine's favor.   The release is in the usual form, with this clause added:

"and more particularly this Release is given for the purpose of releasing and discharging *any claim held by or accruing to the said John J. Breen,* individually, and trading as BANKERS REALTY CO., *growing out of the sale* of premises formerly owned by Norman Levine, commonly designated as 1032 East Lawn Court, Teaneck, New Jersey, to Harry G. Peck, *or* for any real estate commissions, charges, claims or demands, growing out of any sales, brokerage, commission claims or otherwise up to the date of these presents." (Italics added)

Plaintiff claims in one count of the complaint that defendant and Levine tortiously conspired to deprive him of the commission he would otherwise have obtained.   After scrutinizing the affidavits submitted on the motion for summary judgment, it seems to us that defendant has not established that palpably there was no genuine issue as to whether there was such a conspiracy.   In another count plaintiff charges defendant alone with having tortiously interfered with his right to earn the commission.   However we need not deal with this count; in the first place, defendant has not established from the affidavits that palpably there was no such interference, and in addition, obviously, the release to Levine would not bar plaintiff's action to recover from the defendant for damages resulting from the latter's sole tort.

We concern ourselves then only with the charge of conspiracy.   Some argument is made by plaintiff that since the release was given on the settlement of the above-mentioned litigation, and since the litigation involved solely claims contractual in nature, being a suit for commissions, therefore the release should be construed as inapplicable to a claim, such as the present one, sounding in tort.   However, as patently indicated by the italics we have inserted, the terms of the instrument are broad and contain no such qualification.

Such being the effect of the release so far as Levine is concerned, what then is its collateral effect upon defendant,

the alleged co-tortfeasor. That, as indicated in the opening of this opinion, is the principal issue here. Our courts are committed to the view that joint tortfeasors are severally liable for their torts, or at least jointly and severally liable therefor. *Malinauskas v. Public Service Interstate Transp. Co.*, 6 *N. J.* 269, 274 (1951) ; *Ristan v. Frantzen*, 14 *N. J.* 455, 460 (1954), affirming 26 *N. J. Super.* 225, 230 (*App. Div.* 1953) ; *Newman v. Fowler*, 37 *N. J. L.* 89 (Beasley, C. J., *Sup. Ct.* 1874) ; *Restatement, Torts* § 875; *Harper and James, Torts* § 10.1 (1956). It might therefore seem, if we were to consider the logic of the matter, that a release to one tortfeasor could hardly be said to discharge his co-tortfeasor from a several liability. *Cf. Restatement, Contracts,* § 123; see further 4 *Corbin, Contracts,* 735 (1951). But the law on this point has about it the air of mystery sometimes borne by the early law.

It could indeed be asserted with some show of logic that in the usual case where it might be said that there is only a single cause of action arising as a result of concerted conduct on the part of two or more persons—such as the conspiracy declared upon in the complaint here—that a release of one person would leave remaining nothing but a fractured cause upon which to bring a suit. But this metaphysical logicity has nothing to recommend it. One tortfeasor should not be permitted to escape his deserts merely because of the discharge of his co-tortfeasor's liability.

The common law rule not only was without rational basis in the usual case, but it served merely to snare the unwary claimant. *Corbin, supra,* 735, 737; *McKenna v. Austin,* 77 *U. S. App. D. C.* 228, 134 *F. 2d* 659, 662, 148 *A. L. R.* 1253 (*App. D. C.* 1943). Indeed it has been said that the rule that "a discharge of one of several tortfeasors necessarily discharges the others always works to defeat the intention of the parties." *Comment, Proposed Final Draft, Restatement, Torts,* § 885 (1939).

The *Gottscho* case must be taken to have rejected the *dictum* in *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N. J.* 67, 85, 86 (1954) (*cf.* 25 *N. J.* 17, 35 (1957))

supporting the common law rule (we have observed that the court in both opinions in *Judson* noted that our Legislature has not adopted section 4 of the *Uniform Contribution Among Tortfeasors Act,* 9 *U. L. A.* 156). For other earlier cases supporting the common law rule, see *e. g. Line & Nelson v. Nelson & Smalley,* 38 *N. J. L.* 358 (*Sup. Ct.* 1876) (*dictum*); *Munyan v. French,* 60 *N. J. L.* 12 (*Sup. Ct.* 1897); *cf. Klotz v. Lee,* 21 *N. J.* 148, 152 (1956). The *Gottscho* case also, in effect, rejected the modified rule adopted by the *Restatement, Torts,* § 885 (note the inconsistency with *Restatement, Contracts,* § 123) which indeed presents much the same trap as did the common law rule. Incidentally, the court also, in effect, rejected the rule that a release under seal constitutes, by implication, irrebutable proof of payment in full, a purely fictive implication. *Administrator of Crane v. Alling,* 15 *N. J. L.* 423, 425 (*Sup. Ct.* 1836); *cf. Prosser, Torts* (*2d ed.*), 243, *n.* 12, 14. Today a release under seal imports, not full payment, but merely a destruction or extinguishment of a claim of the releasor against the releasee. Further, see *Waln v. Waln,* 53 *N. J. L.* 429 (*E. & A.* 1891) (for the statute there dealt with, see *N. J. S.* 2A:82–3); 6 *Williston* (*rev. ed.*), *Contracts* § 1820.

Under the rule espoused in the *Gottscho* case, a release of one of two tortfeasors does not work a discharge of the other, unless it was so intended or unless the consideration given constituted full satisfaction of the claim or (*McKenna v. Austin, supra,* 77 *U. S. App. D. C.* at page 233, 134 *F.* 2d at page 664; *Prosser, supra,* 245, 246) was intended as such. Such questions of intention and the further question whether full satisfaction has been received, raise factual problems. *Adolph Gottscho, Inc., v. American Marking Corp., supra,* 18 *N. J.,* at page 470; *Judson v. Peoples Bank & Trust Co. of Westfield, supra,* 17 *N. J.* at page 85; *Brandstein v. Ironbound Transportation Co.,* 112 *N. J. L.* 585, 589 (*E. & A.* 1934).

The parol evidence rule does not preclude proof as to what was the intention of the parties to the release with

respect to the particular matter at hand—that is, as to whether they intended to discharge the claim against the second tortfeasor or to treat the consideration theretofore received, as full satisfaction of that claim. 3 *Corbin, supra,* § 596; *cf. Atlantic Northern Airlines, Inc. v. Schwimmer,* 12 *N. J.* 293, 301 (1953); *Harper and James, supra,* 713, *n.* 115. This may be drawn from the ruling in the *Gottscho* case.

There is an obvious difficulty in determining what constitutes full compensation for an unliquidated claim in tort. That, without doubt, is the basis for the apparent indefiniteness of Prosser's suggested criterion, cited in the *Gottscho* case, that a plaintiff's cause of action should be barred where "he has received such full compensation that he is no longer entitled to maintain it." The point seems to be that a plaintiff should be precluded from proceeding with the cause if the compensation was of such sufficiency that he probably thought of it as full satisfaction. We need not decide whether because of the difficulty in establishing what constitutes payment of an unliquidated claim, the release should be taken as presumptive evidence of full payment, thus requiring the plaintiff to establish that he did not receive full compensation, *Prosser, supra,* 246; or whether the presumption should be that full satisfaction has not been received, the premise being that the settling wrongdoer would ordinarily not be willing to furnish complete indemnity, unless his co-tortfeasor was judgment proof. *McKenna v. Austin, supra,* 77 *U. S. App. D. C.* at *page* 233, 134 *F. 2d* at *page* 664. Here the claim is for commissions lost, namely, 5% of $29,000, a liquidated sum, together with a demand for punitive damages. However this latter demand, though it is unliquidated, was quite apparently not within the contemplation of the parties at the time the release was given. In such a situation the defendant, if he proposes to rely on the release, should plainly have the burden of establishing also that the release was intended to relieve him of liability or that the $900 was paid in full satisfaction of plaintiff's claims. *Cf. Harper and James,*

*supra,* 713, *n.* 116. These are factual issues, and obviously the affidavits submitted do not justify a summary judgment as to them.

Defendant advances certain other contentions, but we think only one requires comment. He claims that though the plaintiff brought the defendant and Levine together and induced them to enter into negotiations, nevertheless the defendant did not buy property from Levine until after a substantial break in those negotiations; and hence the alleged acts of defendant and Levine could not be said to have deprived plaintiff of any right he would have had to commissions. *Ordinarily* where there is such a break in the negotiations, the broker cannot be regarded as the efficient cause of the subsequent sale. *George H. Beckmann, Inc., v. Charles H. Reid & Sons, Inc.,* 44 *N. J. Super.* 159, 169 (*App. Div.* 1957). But here, as above stated, it could not be said that the affidavits on the motion for summary judgment raise palpably no genuine issue as to whether plaintiff would in all likelihood have secured a right to commissions, were it not for the acts of defendant and Levine.

Judgment reversed, insofar as it dismisses the complaint (no appeal has been taken from the dismissal of the counterclaim).