93 N.J. Super. 522 (1966)
226 A.2d 460
JEFFREY KNUTSEN, AN INFANT BY HIS GUARDIAN AD LITEM, HAROLD KNUTSEN, INDIVIDUALLY, AND RITA KNUTSEN, PLAINTIFFS,
v.
LEONARD BROWN, MATTHEW FELDMAN, HACKENSACK HOSPITAL, HERMAN GROSSMAN AND BERNARD ETRA, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Argued November 4, December 2, 1966.
Decided December 2, 1966.
Rehearing Denied December 16, 1966.
*526 Mr. William O. Barnes, Jr., for plaintiffs.
Mr. Daniel K. Van Dorn. for defendant, Leonard Brown (Messrs. Mead, Gleeson, Hansen & Pantages, attorneys).
*527 Mr. H. Curtis Meanor, for defendants, Matthew Feldman, Herman Grossman and Bernard Etra (Messrs. Braun and Braun, attorneys).
Mr. Edward Olsen, for defendant, Hackensack Hospital (Messrs. Winne & Banta, attorneys).
MALECH, J.S.C.
This case is before me upon motion by defendants for summary judgment upon two grounds: (1) the claim (per quod) of the parents, Harold Knutsen and Rita Knutsen, is barred by the statute of limitations (N.J.S. 2A:14-2 and 2A:14-2.1); and (2) the claim of infant plaintiff Jeffrey Knutsen has been satisfied and discharged by payment of a judgment previously entered in favor of the infant, and that he has therefore received full satisfaction of his claim for personal injuries.
Plaintiffs claim damages for medical malpractice and negligent hospital care resulting in personal injuries allegedly caused thereby to the infant plaintiff. Both parents sue per quod. The named individual defendants are physicians and surgeons licensed to practice medicine in New Jersey. The infant plaintiff was born at defendant Hackensack Hospital on February 7, 1959 and received care there.
This malpractice action was commenced on July 10, 1964 on behalf of the infant plaintiff by his guardian ad litem, and by his parents individually, seeking damages solely for the alleged malpractice and negligent treatment administered by the various defendants
In two prior actions (Dockets Nos. L-1150-59 and L-2607-60, consolidated for trial) suit was instituted by the same plaintiffs to recover damages for personal injuries sustained by the infant plaintiff. One of these suits was by Rita Knutsen and Harold Knutsen, her husband, against Fritz W. Salamon and Stephen Weindorf. The other was by Jeffrey Knutsen, infant, and by Rita Knutsen, individually, against the same defendants, Salamon and Weindorf. The complaints alleged that on January 25, 1959 the *528 infant plaintiff, while in the womb of his mother, was injured in a three-automobile collision caused by said defendants' negligence, and that he was born prematurely on February 7, 1959 and suffered injuries as a result of the accident. The suit for negligently inflicted prenatal injury and consequent damages, and the suit by the parents arising out of the automobile accident, were consolidated and tried with a jury and resulted in a verdict and judgment on February 19, 1963, as follows: "against the defendants, and in favor of the plaintiff, Jeffrey Knutsen, an infant by his guardian ad litem, Rita Knutsen, for the sum of $17,000; and in favor of the plaintiff, Rita Knutsen, individually, for the sum of $1,700; and the jury having returned a verdict in favor of defendants and against the plaintiff, Harold Knutsen, of No Cause for Action." The plaintiffs received payment, and a warrant to satisfy judgment was filed on July 11, 1963. One year later the instant malpractice suit was commenced.
Defendants' first contention is that the claims of the parents are barred by the statute of limitations. The applicable statute of limitations in a suit for personal injuries based upon the alleged malpractice of the doctors and hospital, N.J.S. 2A:14-2, provides:
"Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued."
The dispositive issue on this motion is whether N.J.S. 2A:14-2.1, effective October 28, 1964, creates a right to sue upon a claim already barred by the statute of limitations. The statute provides:
"Where a parent or other person has a claim for damages suffered by him because of an injury to a minor child caused by the wrongful act, neglect or default of any person within this State, an action at law upon such claim may be commenced by the said parent or other person within the same period of time as provided by law in the case of the said minor child so injured, provided that, if an action is commenced *529 by or on behalf of the said minor child, the said claim of the parent or other person shall be asserted and maintained in such action brought on behalf of the injured minor child either as a plaintiff or third party plaintiff and if not so asserted shall be barred by the judgment in the action brought on behalf of said injured minor child"
Plaintiffs' contention is briefly summarized in their brief as follows:
"Defendants contend that the parental per quod claim is barred by the Statute of Limitations by virtue of the case of Higgins v. Schneider, 61 N.J. Super. 36 [160 A. 2d 165] (App. Div. 1960), Affirmed, 33 N.J. 299 [164 A. 2d 299] (1960) which held that a suit by a parent for injuries to his child if not instituted within two years is barred by N.J.S. 2A:14-2. However, since the enactment of N.J.S. 2A:14-2.1 (L. 1964, c. 214), Higgins no longer controls."
The court disagrees with that contention. The parents' claim was barred when suit was commenced on July 10, 1964. The rule is that when a right of action is barred by a statute of limitations, it cannot be revived by a subsequent act of the Legislature. State, by Parsons v. Standard Oil Co., 5 N.J. 281 (1950), affirmed 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951); Burns v. Bethlehem Steel Co., 20 N.J. 37, 42 (1955). Defendants had a vested right of defense prior to the enactment of N.J.S. 2A:14-2.1, and plaintiff parents' alleged cause of action could not be revived. The motion to dismiss plaintiffs' per quod action is granted.
In support of the motion for summary judgment upon the second ground, i.e., full satisfaction already received by the infant plaintiff, defendants rely upon the pleadings, pretrial order, depositions of Rita and Harold Knutsen, affidavits of Henry G. Morgan, Esq., and William P. Braun, Esq., interrogatories, prior court records (including plaintiffs' motion for a new trial in the prior suits because the verdict was inadequate), medical testimony of Dr. Beaugard, Dr. Winter, Dr. McDonald, Dr. Merliss, and the decision of former Judge Broadhurst denying the motion for new trial.
*530 The court at this juncture is neither called upon nor permitted to make any determination of any disputed material fact. It is sufficient to quote from R.R. 4:58-3:
"* * * The judgment or order sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show palpably that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law * * *."
The moving parties for summary judgment have the burden of establishing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle them to judgment as a matter of law. It is only where it is clear that there are no factual issues in the case that a summary judgment is proper. Moreover, because of the summary nature of the disposition of the issue of the case by motion, such relief is to be granted with much caution so as not to defeat a litigant's right to a plenary trial on the merits. Judson v. Peoples Bank and Trust Company of Westfield, 17 N.J. 67 (1954).
In reviewing the record submitted here to determine whether the issue is thus ripe for summary disposition, the court must have particular concern for the balancing of opposing philosophies brought into focus by the summary judgment procedure, exercising caution to avoid a precipitate stifling of a trial of the issue and yet not hesitating to afford protection against frivolous litigation.
The pivotal question on this motion is whether a judgment against the original wrongdoers, in a suit claiming that all damages resulting from prenatal injuries were caused by such wrongdoers, bars an action subsequently commenced for malpractice against various allegedly negligent physicians and a hospital, claiming aggravation of such injuries and additional injuries. The question is posed because defendants contend that plaintiff has recovered full satisfaction for all his injuries, and that the law does not permit a double satisfaction for the same injuries.
*531 This issue is novel in the sense that the precise question has not been decided in New Jersey. The court is thus required to consider the problem in the light of analogous established precedents. Adherence to established law is a guidepost for the trial judge. Thus, judicial policy has some force with respect to the issue involved in this case, particularly at this juncture of the proceeding involving a motion for summary judgment.
For purposes of this motion the following facts can be taken as established. Rita Knutsen was treated by Dr. Brown for pregnancy commencing in September 1958 and periodically thereafter. While pregnant she was involved in an accident on January 25, 1959 which resulted in a lawsuit on behalf of her infant son, who was prematurely born on February 7, 1959. That action was also brought by Rita Knutsen and Harold Knutsen, individually. It resulted in a judgment against Salamon and Weindorf of $17,000 for the infant and $1,700 for Rita. It can further be taken as established that the infant was treated at Hackensack Hospital from February 7 through March 6, and that the infant was delivered by Dr. Brown. It can also be taken as established that treatment was rendered to the infant by the other defendants at various times between February and July 1959.
The particular acts of alleged malpractice negligence are sufficiently set forth in the moving papers, and the court is not here called upon to decide the underlying dispute between the parties concerning the alleged malpractice. Such facts are not disputed at this juncture by defendants. Indeed, if they chose to dispute any of them, summary judgment would not be warranted. Miller v. Atlantic Cas. Ins. Co., 16 N.J. Super. 531 (Law Div. 1952); Felbrant v. Able, 80 N.J. Super. 587 (App. Div. 1963); Bouley v. Bradley Beach, 42 N.J. Super. 159 (App. Div. 1956).
It is undisputed that since 1960 in New Jersey a child born alive has a cause of action for prenatal injuries caused by a tortfeasor. A comprehensive review of the law appears in the opinion of our Supreme Court in Smith v. Brennan, *532 31 N.J. 353 (1960), which recognized a cause of action for prenatal injuries in favor of a child born alive, and overruled the 1942 ruling to the contrary in Stemmer v. Kline, 128 N.J.L. 455 (E. & A. 1942).
One of the reasons advanced by defendants in Smith v. Brennan for denying recovery for prenatal injuries was that "proof or disproof of causal connection between negligent conduct and an injury discovered at birth or later is so difficult that recovery would often be based on mere conjecture and speculation, and that the door would be opened to fictitious claims." In rejecting that contention the court stated:
"The trial courts retain sufficient control, through the rules of evidence, * * * to safeguard against the danger that juries will find facts without legally adequate proof. 2 Harper and James, Torts, par. 18.3, p. 1029 (1956); Prosser, Torts, par. 36, p. 174 (2d. ed. 1955). Though we recognize the question of causation will doubtless be crucial in prenatal injury cases, we do not believe that the difficulty of proof will be so great as to justify a blanket prohibition against all attempts to overcome it."
The problems of proof of causal connection between the negligent conduct of a tortfeasor and injuries discovered at birth or later obviously become more complex when joined with a claim against a doctor for malpractice. Insofar as the claim against the original tortfeasor is concerned, such problems as intermingling a claim for damages because of the physician's negligent conduct becomes academic. This for the reason that a tortfeasor is liable for all of the proximate result of his own tortious act, including the aggravation of the original injury caused by the negligent act of the physician. On the other hand the jury must deny recovery against the physician for the injury suffered by the infant plaintiff because of the automobile collisions. Trail v. Green, 206 F. Supp. 896 (D.N.J. 1962).
The proofs offered at the trial of the infant plaintiff's suit against the original tortfeasors (Salamon and Weindorf) sought recovery for all injuries, and proofs as to causal connection between the negligent conduct of the tortfeasors *533 and the injuries presented issues of fact to be determined by the jury. Proofs as to any alleged malpractice by a hospital or doctors were not presented to the jury. All injuries were attributed to be the result of the automobile accident. If that case had not proceeded to trial and resulted in a judgment in favor of the infant for $17,000, but instead had been settled for $17,000, the case of Daily v. Somberg, 28 N.J. 372 (1958) would control. Defendants contend that Daily v. Somberg is readily distinguishable because it dealt with a release given to the original tortfeasor, and did not involve a judgment in favor of the infant plaintiff. The effect of the release is expressed by the court in that case as follows:
"(7-9) If the release of Dealer's Transport Company was actually intended to release the doctors, or if the amount paid by Dealer's actually constituted full compensation for the plaintiff's claims against Dealer's and the doctors or was accepted as such, then the plaintiff may not fairly or equitably seek further recovery. But these issues of intent and full compensation are factual in nature and could not properly be determined by the trial court on the showing made on the defendants' motion for summary judgment. See Breen v. Peck, supra. [48 N.J. Super. 160 (App. Div. 1957)] The release to Dealer's did not on its face suggest that there was any intent to release the doctors nor did it suggest that the plaintiff received full compensation for his injuries. On the contrary, it named only Dealer's, its successor corporation and its employee Elliot, as the releasees and it expressly set forth that the sum paid to the plaintiff was in settlement and compromise and without admission of liability. See Steenhuis v. Holland, 217 Ala. 105, 115 So. 2, 4 (Sup. Ct. 1927):
`When the release shows it was in compromise of the liability of the party to whom given, with no reference to a full satisfaction as against others, we can see no just presumption that they had in mind a release of others in whom the released party had no interest.'" (at p. 384)
Cf. Hauth v. Sambo, 100 Neb. 160, 158 N.W. 1036, 1040 (Sup. Ct. 1916).
The instant situation does not, in any sense, involve joint tortfeasors. Daily v. Somberg, supra.; Fisher v. Milwaukee Electric Ry. & Light Co., 173 Wis. 57, 180 N.W. 269 (Sup. Ct. 1920). Thus, the acts complained of in the original actions following the auto accident, and those complained *534 of today, are successive independent torts. The gravamen of defendants' contention is that since the original tortfeasors are liable for all the reasonably foreseeable consequences of their wrongdoings, and since the plaintiff has received satisfaction of a judgment against such individuals, it follows that he is not free to institute another action for injuries sustained as the proximate result of the negligence of a person attempting to treat the prior injuries. Such a rule can find no support either in justice or logic. In the first place, there is no law which requires this court to find that the injuries complained of today are the reasonably foreseeable consequences of the wrongdoing of the original tortfeasors. The fact that judgment was rendered against the original tortfeasors is not conclusively indicative of the fact that the injuries complained of today are the reasonably foreseeable consequences of the wrongdoing of the original tortfeasors, nor does the satisfaction of the judgment warrant such a conclusion.
Defendants further contend that the following three propositions must be taken as undisputed: (1) the primary tortfeasor would be responsible for any aggravation, acceleration or exacerbation of the condition of the infant plaintiff caused by medical malpractice; (2) the original tortfeasor was severally liable for the totality of harm flowing from the original accident and the consequences of treatment for the injuries sustained therein; and (3) if the defendant doctors and hospital were guilty of malpractice, they would be jointly and severally liable with the original tortfeasor for that portion of the total harm which was attributable to their wrongdoing.
Assuming this is so, causation due to malpractice was not presented as an issue to the jury. In fact the issue of causation as to injuries due to the negligence of the original tortfeasors was disputed. No proofs were submitted on this motion to support a claim that issues of malpractice were submitted to the jury. The fact that plaintiff could have legally charged the original tortfeasors with the results of *535 any malpractice, but did not do so, should not bar a recovery for malpractice.
Defendants further contend that Restatement of Judgments, § 95, is dispositive of the issue, in that "The discharge or satisfaction of a judgment against one of several persons each of whom is liable for a tort, breach of contract, or other breach of duty, discharges each of the others from liability therefor" This section is not applicable. The case involves successive independent torts. In Daily v. Somberg, the court stated:
"Where, as in Adams [Adams v. De Yoe, 11 N.J. Misc. 319 (Sup. Ct., 1933)] and here, the court is concerned not with a joint tort but with successive independent torts, it is even more evident that the release of the original tortfeasor may not rationally be given the effect of automatically releasing the successive tortfeasor who, though he has made no payment whatever towards satisfaction of the injury he wrongfully inflicted, seeks a windfall because of the compromise of the claim against the original tortfeasor." (28 N.J., at pp. 383-384).
The holding in Kelley v. Curtiss, 16 N.J. 265 (1954)  that where a city employee (police officer) and the employer (city) are joined as parties defendant in an action for injuries allegedly occasioned solely by the negligence or misfeasance of the employee, a verdict which exonerated the employee from liability because of plaintiff's contributory negligence required exoneration of the employer (city)  is not applicable. Similarly, in Minery v. Fenton, 29 N.J. 409 (1959), where a Massachusetts judgment was entered against an automobile driver in a wrongful death action based solely on the negligence of the driver, and judgment was entered against the owner of the automobile under the doctrine of respondeat superior and not because of any culpable negligence on his part, the administrator's action in unconditionally releasing the driver upon his payment of part of the judgment in full satisfaction of the judgment against him had the legal effect under Massachusetts law and New Jersey law of satisfying or releasing the related claim against the owner.
*536 Defendants contend that the Kelley and Minery cases are dispositive of the issue in this case. Both cases are not applicable to the issue involved.
In McAndrew v. Mularchuk, 38 N.J. 156 (1962), it was held that plaintiffs who recovered judgment against a reserve police officer and who, on appeal, secured a reversal of a portion of the judgment in favor of the municipality, were bound by the judgment as to the amount of damages they obtained against the police officer and the municipality might assert estoppel as to damages against them on retrial, but would be required to accept the verdict in its entirety. It is significant that the court concluded that one act alone  the shooting by Mularchuk  caused the injury, and that it must be assumed that in the former trial plaintiffs completely tried the issue of compensation  that all parties submitted their proofs in full.
It cannot be said with certainty on this motion for summary judgment that the plaintiff has had his day in court on this issue of defendants' malpractice and the resultant extent of injuries caused thereby. Of course, the court recognizes the practical problems generated in this type of case, in attempting to prove what damages (injuries) proximately resulted to the infant plaintiff from the automobile accident, and what damages (injuries) proximately resulted from malpractice. The difficulties of proof should not deprive plaintiff of his day in court.
There are numerous cases in several jurisdictions involving negligence suits and subsequent malpractice actions against treating physicians. The majority of early American cases, and indeed the early New Jersey case of Adams v. De Yoe, 11 N.J. Misc. 319, 166 A. 485 (Sup. Ct. 1933), held that where plaintiff had released the original tortfeasor, he was barred from an action for malpractice against treating physicians. See Feinstone v. Allison Hospital, 106 Fla. 302, 143 So. 251 (Sup. Ct. 1932); Milks v. McIver, 264 N.Y. 267, 190 N.E. 487 (Ct. App. 1934). The California case of Ash v. Mortensen, 24 Cal.2d 654, 150 P.2d 876 (Sup. Ct. 1944), however, altered the prior trend of decisions. That case held that a *537 prior release to an original tortfeasor would not be a bar to an action against a treating physician for malpractice. It put the burden upon the party advancing the release as a defense to prove that plaintiff had been fully compensated for his loss. New Jersey followed the trend of Ash v. Mortensen in Daily v. Somberg, 28 N.J. 372 (1958), holding that summary judgment dismissing a malpractice complaint where the defense of general release given to a prior tortfeasor was raised, was improper in that the party advancing the release should be called on to show that the release was intended to discharge the doctor and also that the plaintiff has received full compensation for his injuries. The Supreme Court rejected the rule of Adams v. De Yoe, supra.
Daily v. Somberg involved a release and not a satisfied judgment, and defendants urge that this fact should make the ratio decidendi of this case contra to Daily. The court thinks not. Following the Daily decision in New Jersey, the Supreme Judicial Court of Massachusetts decided Selby v. Kuhns, 345 Mass. 600, 188 N.E.2d 861 (1963) which involved a consent judgment prior to a malpractice action. The court there held that the satisfaction of the judgment was not a bar to the malpractice suit and that the question of whether plaintiff was fully compensated for the injuries resulting from malpractice was still open.
The search for judicial policy as it may apply to the "one-satisfaction rule" is discussed in Theobald v. Angelos, 44 N.J. 228 (1965), involving joint tortfeasors and the effect of settlement by plaintiff with a joint tortfeasor and one who is charged with a wrong but who in fact is not a party to it.
"The one-satisfaction rule is equitable in nature and was designed to prevent unjust enrichment. Prosser, Torts, Sec. 45, p. 267 (3d ed. 1964)."
The court stated that as between a plaintiff who suffered injury and a defendant who has paid nothing, if defendant can invoke the one-satisfaction rule, he will enrich himself to the extent of another's overpayment. Therefore, as between plaintiff and the nonpaying defendant, plaintiff has *538 the better of the argument in terms of both fairness and utility. If there is enrichment, it is not at defendant's expense.
The issues involving pro rata and pro tanto credits involved in Theobald are not presently applicable to the determination of the issue raised by this motion for summary judgment. Neither is the question of the rights as between the original tortfeasors and the doctors and hospital necessary for determination at this time.
Judicial policy prompts adherence to the trend initiated with Daily v. Somberg, supra. Summary judgments are to be granted with caution. Hodes v. Dunsky, 5 N.J. Super. 333 (App. Div. 1949); Ruvolo v. American Cas. Co., 39 N.J. 490 (1963); R.R. 4:58-3. The court at this juncture will not try issues of fact or determine intent. Mayflower Industries v. Thor Corp., 15 N.J. Super. 139 (Ch. Div. 1949), affirmed 9 N.J. 605 (1952). The court will not say, as a matter of law, that the infant plaintiff has been fully compensated for all his injuries which may have resulted from defendant's malpractice, and unless this specific fact be established, it cannot rule as a matter of law that the malpractice claim be dismissed. The satisfaction signed by the infant plaintiff, by his guardian ad litem, merely recites that the judgment against the original tortfeasors has been satisfied and said individuals are discharged. What the original jury intended by its original verdict will never be known and certainly is not open to investigation. The jury did not decide that any injuries were due to malpractice. Satisfaction of the judgment did not by operation of law release the doctors and hospital. Clearly the defendants here were not named in said satisfaction. Justice requires in this case that the jury determine what injuries proximately resulted from the malpractice for which complaint is made. Needless to say, the burden remains upon the plaintiff to prove that the injuries complained of were proximately caused by the malpractice and not by the negligence of the prior tortfeasors.
*539 It is true that the law does not permit a double satisfaction for a single injury. The issues of causation at the original trial presented fact questions for the jury. It cannot be said with certainty that all of these factual issues were resolved favorably to the infant plaintiff. In fact, plaintiff sought a new trial because of alleged inadequacy of damages. Whether full satisfaction has been had by the infant plaintiff of all damages caused, not only by the original wrongdoer but also by negligence of the hospital and doctors, can best be resolved by a trial of the specific issues at this time. Such issues are impossible of disposition by the court as a matter of law upon a motion for summary judgment, and must be resolved by the trier of the facts upon a full trial.
The motion for summary judgment is denied.
The questions of one satisfaction, unjust enrichment, rights as between the original tortfeasors and the doctors and hospital, as well as the difficulties involved in attempting to apportion the injuries and damages attributable to each of the successive wrongs and thus to separate the damages allegedly caused by malpractice, may possibly be avoided at the trial of the case.
The burden rests upon plaintiff to prove the causal relation and the extent of damages which proximately resulted from the malpractice of defendants forming the basis of plaintiff's claim. Defendants express concern that it would be difficult and perhaps practically impossible for the jury to apportion such damages attributable to these defendants. It may well be that plaintiff's total injuries cannot be apportioned with such full certainty as to satisfy defendant's version of justice. Perhaps some measure of affording relief to defendants may be achieved by following the admonition expressed in Theobald v. Angelos, 40 N.J. 295, 304, 305 (1963).
In the trial of the matter it is suggested that the case be submitted to the jury in the following manner:
First, the jurors must decide on the evidence whether the defendants on trial were guilty of malpractice which proximately *540 resulted in injuries and damages. After reaching an affirmative conclusion on that subject, they should then pass to a determination of the amount of compensation to be awarded for all of the injuries and damages proximately caused by the original tortfeasors (automobile drivers) and the doctors and hospital for malpractice. The jury would be instructed to give to the plaintiff the total sum representing reasonable compensation for his injuries and damages caused by all the tortfeasors. No attempt would be made to apportion such injuries and damages.
Second, the jurors would be instructed that a judgment for damages caused by the original tortfeasors has been rendered in plaintiff's favor. The amount of the judgment would not be given to the jury.
As stated in Theobald v. Angelos, supra:
"A properly compensatory verdict can be expected once the trial court, by its instructions, engenders in the minds of the jurors an appreciation that injustice and inadequate recovery will fall upon the plaintiff if, on the basis of some effort at allocation among the [tortfeasors] they lower the total sum he is entitled to receive as measured by the elements of damage described above." (at p. 305)
From any judgment rendered in this case, if it exceeds the amount of the previous judgment, would be subtracted $17,000 received by plaintiff.

ON MOTION FOR REARGUMENT
On December 2, 1966 this court rendered its opinion denying defendants' motion for summary judgment as to the infant's claim for damages based upon the defendants' malpractice. Because of the novelty of the issue involved, defendants indicated the necessity of an appeal from the court's ruling.
On December 5, 1966 our Supreme Court decided the case of Theobald v. Kenney's Suburban House, Inc., 48 N.J. 203. The court determined that it "should not depart from the rule that the satisfaction of a judgment obtained against one tortfeasor bars the maintenance by plaintiff of an action against another tortfeasor for the same claim."
*541 Under these circumstances defendants request that the court reconsider its opinion in the light of the most recent ruling of the Supreme Court. It is reasonable and proper to grant all parties full opportunity to file such supplemental briefs as they may desire and to be afforded further oral argument.
The parties have agreed that further supplemental briefs are not necessary as they will rely upon the latest Theobald decision. Accordingly the matter proceeded upon oral argument.
Each case must be considered upon its individual factual basis. Theobald v. Kenney's Suburban House, Inc., supra, involved a claim against the operator of a restaurant, on a charge that it was at fault in that it sold liquor to a co-tortfeasor (Conaty) when he was intoxicated, in breach of a duty recognized in Rappaport v. Nichols, 31 N.J. 188 (1959). Conaty thereafter crashed his automobile into the rear of a police car, thereby crushing plaintiff who was standing between the police car (Angelos) and another car (Anderson). In the trials of the cases it was determined that the culpable tortfeasors were Conaty and Angelos (including Delaware Township as Angelos' employer).
It is significant that the court at all times determined that the culpable tortfeasors (Angelos and Conaty) were joint tortfeasors. The case did not involve successive injuries due to successive independent torts causing an aggravation of a pre-existing condition or new injuries. Theobald involves injuries caused by the one accident. Thus Theobald could not lawfully obtain more than one full satisfaction for his injuries. All of Theobald's injuries resulted from the automobile accident. From this factual setting the Supreme Court concluded:
"* * * we are satisfied that we should not depart from the rule that the satisfaction of a judgment obtained against one tortfeasor bars the maintenance by plaintiff of an action against another tortfeasor for the same claim."
*542 The "claim" alluded to above refers to the injuries and losses caused by the automobile accident. In the former trial of Theobald as to damages only plaintiffs completely tried the issue of compensation. On the other hand, in the instant case the jury must deny recovery against the physicians and hospital for the injuries suffered by the infant plaintiff because of the automobile collision. The burden still remains upon plaintiff to prove that the injuries complained of were proximately caused by the malpractice/negligence of the physicians and hospital, and not by the negligence of the prior tortfeasors As stated heretofore, the difficulties of proof should not deprive plaintiff of his day in court.
The court recognizes the rule that a tortfeasor is liable in damages to the extent that his wrong aggravates a preexisting disability or injury, but in such situation the tortfeasor is liable only to the extent of such aggravation. The tortfeasor is also liable for any new injury proximately caused by his wrongdoing. He is not liable for the pre-existing condition as such.
The fact that the original tortfeasors could be liable for all the proximate results of their negligence resulting from the automobile accident, including the aggravation of the original injury caused by the negligence of the doctors and hospital, does not automatically create the status of joint tortfeasors as between the original tortfeasors and the doctors/hospital. Likewise, as to new injuries caused by malpractice, the status of joint tortfeasors as between the original culpable defendants is not necessarily created. Thus, while it is true that the automobile drivers (original tortfeasors) could have been held liable for the aggravation of the injuries caused by the doctors/hospital malpractice, such liability is not necessarily the result of any concept of joint tortfeasors but is rather an application of the rule that wrongdoers are liable for the reasonably foreseeable consequences of their tortious act, including the malpractice of a doctor. Conversely, it would not be contended that the doctors are liable for injuries caused by the original tortfeasors which were not *543 the consequences of the doctors' malpractice. The concept of applying the rule as to joint tortfeasors, so vigorously urged by the defendants in the instant case, is doubtful.
Since the joint tortfeasor rule, and the underlying reasons therefor as applied in the Theobald case, are not applicable in the present malpractice case, it should not be concluded, as a matter of law, that satisfaction of the judgment against the original tortfeasors bars the present action. On the contrary, the concept of distinguishing joint tortfeasors from successive tortfeasors as applied to malpractice actions, such as involved here, is recognized in Daily v. Somberg, 28 N.J. 372 (1958), and emphasized in Derby v. Prewitt, 12 N.Y.2d 100, 236 N.Y.S.2d 953, 187 N.E.2d 556 (Ct. App. 1962), and in DeNike v. Mowery, 418 P.2d 1010 (Wash. Sup. Ct. 1966).
The rule of law that "satisfaction of a judgment obtained against one tortfeasor bars the maintenance by plaintiff of an action against another tortfeasor for the same claims," as expressed by our Supreme Court, must be followed by the trial court when applicable to the facts in a particular case The claim for injuries to the infant plaintiff occasioned by malpractice may be a different claim from that of the claim for injuries occasioned by the original tortfeasors.
For the reasons expressed, the motion for summary judgment is denied.