744 A.2d 255 (2000)
327 N.J. Super. 595
Raymond McGROGAN and Pauline McGrogan, Plaintiffs-Appellants,
v.
Peter W. TILL, An Attorney at Law of the State of New Jersey, Andrew J. Goldstein, An Attorney at Law of the State of New Jersey, Allyn Z. Lite, An Attorney at Law of the State of New Jersey, Samuel N. Reiken, An Attorney at Law of the State of New Jersey, and the Firm of Goldstein, Till, Lite And Reiken, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 1999.
Decided February 1, 2000.
*256 Kenneth S. Javerbaum, Springfield, for plaintiffs-appellants (Javerbaum, Wurgaft, Hicks & Zarin, attorneys; Mr. Javerbaum, of counsel; David L. Wikstrom, on the briefs).
Thomas G. Roth, Newark, for defendants-respondent Peter W. Till (Roth & Fettweis, attorneys; Mr. Roth, of counsel; Robin A. Newman and Louise Arkel, on the joint brief).
Bruce D. Greenberg, Newark, for defendants-respondents Andrew J. Goldstein, Allyn Z. Lite and Goldstein Lite & DePalma (Lite, DePalma, Greenberg & Rivas, attorneys; Andrew J. Goldstein and Mr. Greenberg, of counsel; Mary Jean Pizza, on the joint brief).
Before Judges SKILLMAN, D'ANNUNZIO and FALL.
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
This is a unique case involving a claim of legal malpractice allegedly committed by defense counsel in the context of a criminal prosecution. Plaintiff Raymond McGrogan pled guilty to a federal indictment on December 18, 1989. He was sentenced on January 27, 1992 and filed his malpractice complaint on September 27, 1997. The trial court applied the six-year statute of limitations, N.J.S.A. 2A:14-1, and ruled that the limitations period began to run when McGrogan pled guilty rather than on the sentencing date. McGrogan appeals from the judgment dismissing his complaint.
This appeal initially was calendared in June 1999. In an unpublished opinion we raised sua sponte the following issues: (1) whether N.J.S.A. 2A:14-2, establishing a two-year limitations period for injuries to the person, is applicable rather than the six-year period specified in N.J.S.A. 2A:14-1; and (2) whether an action for *257 legal malpractice can be sustained when the subject conviction has not been reversed or vacated. We ordered the parties to file supplemental briefs on these issues, and the appeal was re-argued. We now affirm.
The material facts are not in dispute. McGrogan was a plumbing contractor and a member of the Wayne Township Planning Board. In 1988 he was charged with conspiring with other Wayne officials to extort money from developers who had projects in Wayne Township. It appears that defendant Till began representing McGrogan at that time.
On February 2, 1989, McGrogan was indicted. The indictment was in four counts. A superseding indictment was filed on April 6, 1989. On April 26, 1989, Till terminated his representation of McGrogan and the court appointed Lawrence Lustberg, a federal public defender, as McGrogan's new lawyer. McGrogan entered into a written plea agreement with the Justice Department dated December 4, 1989. Pursuant to that agreement, he pled guilty to count three of the superseding indictment on December 18, 1989. Count three charged that McGrogan conspired with Louis Messercola, the Mayor of Wayne Township, and with Thomas Acquaviva, also a member of the planning board, to extort money from a joint venture "engaged in a project to construct residential apartment buildings" in Wayne. McGrogan admitted that he received a $10,000 bribe from the joint venture. He retained $5,000, Messercoca received $4,500, and Acquaviva kept $500.
The plea agreement did not include a sentencing recommendation, but the government agreed to dismiss other charges. McGrogan agreed to cooperate with the government and provide evidence against others. On January 27, 1992, the court sentenced McGrogan to an eighteen-month prison term "on condition that the defendant be confined in a community treatment center (Halfway House) for a period of Four (4) months, the execution of the remainder of the sentence of imprisonment is hereby suspended and the defendant is placed on Probation for a period of five years." McGrogan was required to perform 200 hours of community service per year of probation and to pay a fine of $5,000.
On September 2, 1997, McGrogan commenced this action against Till and his law firm. McGrogan's core contentions are contained in paragraphs three and four of the first count of his complaint and in paragraphs two and three of the second count. We reproduce them here:
3. During the course of his representation of the plaintiff, Raymond McGrogan, the defendant, Peter Till failed to properly and adequately communicate with the prosecuting authorities and investigating authorities of the Office of the United States Attorney and did fail to properly and adequately advise and counsel the plaintiff, Raymond McGrogan, with respect to offers of immunity and other offers involving cooperation of Raymond McGrogan with the United States Government and did otherwise in his representation of Raymond McGrogan fail to conform to that standard of competence and reasonable skill in the legal profession involving the representation of defendants as Till represented himself as possessing and otherwise failed to provide adequate competent, diligent and timely representation to the plaintiff and did otherwise deviate from accepted standards of legal practice which resulted in the plaintiff, Raymond McGrogan, being indicted on Four Criminal Counts and ultimately being compelled to plead Guilty to one such count, being stigmatized with a criminal conviction, suffer a loss of liberty, all of which would have been avoided had the defendant, Peter Till, provided proper, adequate and competent representation to the plaintiff Raymond McGrogan.
4. As a direct and proximate result of the actions and inactions of the defendant, Peter Till, as aforesaid, the plaintiff, *258 Raymond McGrogan, was caused to be Indicted, incur a criminal record, lose his liberty, expend time in public service and otherwise sustained economic and emotional loss resulting from the negligent professional representations and course of conduct by the defendant, Peter Till.
2. The defendant, Peter Till did negligently represent and mismanage the representation of the plaintiff by failure to adequately and properly advise the plaintiff of the available opportunities to cooperate with the government and to avoid a criminal conviction and did otherwise fail to properly advise the defendant of offers and invitations provided by the Federal Government and is responsible to the plaintiff pursuant to N.J.S.A. 2A:13-4.
3. As a direct and proximate result of the actions and inactions of the defendant, Peter Till, as aforesaid, the plaintiff, Raymond McGrogan, was caused to be Indicted, incur a criminal record, lose his liberty, expend time in public service and otherwise sustained economic and emotional loss resulting from the negligent professional representations and course of conduct by the defendant, Peter Till.

I
The primary issue is when did the statute of limitations begin to run on plaintiffs' legal malpractice action. That was also the issue in Grunwald v. Bronkesh, 131 N.J. 483, 621 A.2d 459 (1993). Grunwald involved a claim arising out of a proposed sale of realty by Grunwald to Resorts International Hotel and Casino, Inc. Resorts signed an option agreement but also inadvertently signed the contract attached to the option agreement. Grunwald alleged that his lawyer, defendant Bronkesh, advised him that Resorts was bound by the contract it had signed. When Resorts declined to acquire the property, Grunwald sued Resorts, but lost. Plaintiff appealed the judgment, and the Appellate Division affirmed. The issue was whether plaintiff's cause of action against Bronkesh accrued when the trial court ruled against plaintiff or when the Appellate Division affirmed the trial court judgment.
In Grunwald, our Supreme Court noted that "a legal-malpractice action accrues when an attorney's breach of professional duty proximately causes a plaintiff's damages." Id. at 492, 621 A.2d 459. The discovery rule, however, "postpone[s] the accrual of a cause of action when a plaintiff does not and cannot know the facts that constitute an actionable claim." Ibid. The Court observed that knowledge in the context of the discovery rule "involves two key elements, injury and fault." Id. at 492-93, 621 A.2d 459.
Thus, the discovery rule encompasses two types of plaintiffs: those who do not become aware of their injury until the statute of limitations has expired, and those who are aware of their injury but do not know that it may be attributable to the fault of another.
[Grunwald, supra, 131 N.J. at 493, 621A.2d 459.]
The Grunwald Court held that the discovery rule applied to legal-malpractice actions and the limitations period "begins to run only when the client suffers actual damage and discovers, or through the use of reasonable diligence should discover, the facts essential to the malpractice claim." Id. at 494, 621 A.2d 459.
Regarding the element of injury, the Court observed that an adverse judgment may constitute actual damage, but "a client may suffer damages, in the form of attorney's fees, before a court has announced its decision in the underlying action." Id. at 495, 621 A.2d 459. "Therefore, although an adverse judgment may increase a plaintiff's damages, it does not constitute an indispensable element to the accrual of a cause of action." Id. at 495-96, 621 A.2d 459.
*259 The Court concluded:
Applying the foregoing principles we conclude that damage occurred when Resorts refused to close on the property after Grunwald had bypassed another offer. Grunwald then suffered further damages in the form of litigation costs in the underlying action. The element of knowledge of fault was satisfied when the Chancery Division delivered its opinion in the underlying action in Grunwald's presence. When that court declared that "Grunwald should not have reasonably relied on the delivery of the option and the agreement as he did," Grunwald knew or should have known that his damages were attributable to Bronkesh's negligent advice. In addition, we find that the Chancery Division's opinion notified Grunwald of the facts underlying a legal-malpractice cause of action. A plaintiff's cause of action is not deferred until he or she learns the legal effect of those facts. Burd [v. New Jersey Tel. Co.], supra, 76 N.J. [284] at 291-92, 386 A.2d 1310 [1978].

[Id. at 500, 621 A.2d 459.]
Grunwald is a fitting template for the present case. We conclude that injury occurred when McGrogan was indicted in February 1989. McGrogan's civil complaint alleged that "Peter Till failed to properly and adequately communicate with the prosecuting authorities ... and did fail to properly and adequately advise and counsel the plaintiff, Raymond McGrogan with respect to offers of immunity and other offers involving cooperation of Raymond McGrogan with the United States Government...." Plaintiff repeated this theme in the second count which alleged that Till failed to advise McGrogan "of the available opportunities to cooperate with the government and to avoid a criminal conviction."
The sentencing memorandum filed by Lustberg on McGrogan's behalf stressed McGrogan's cooperation with the government and criticized Till. It stated:
In fact, Mr. McGrogan's cooperation with the government would have begun much earlier had prior retained counsel not steadfastly advised him against it, urging him to fight the charges, failing to disclose the advantages of cooperating, and precluding him from following his instincts to voluntarily testify in the grand jury. That advice, apparently given pursuant to the attorney's stated policy of not cooperating with the government, cost Mr. McGrogan over $20,000 and not only resulted in his indictment, but also precluded him from receiving a more favorable plea agreement, possibly even immunity. And, while Mr. McGrogan cannot escape responsibility for the strategy pursued, it would be most unfair to visit the errors of his lawyer upon him. Yet, that might well be the result of imposing a custodial sentence in this case.
The complaint and the sentencing memorandum specifically mention the indictment as one of the adverse consequences of Till's alleged negligence. The memorandum also refers to the $20,000 in legal fees paid to Till before Lustberg was appointed. As previously indicated, McGrogan was indicted in February 1989, and it is a fair inference that Till's legal fees accrued before April 1989 when Lustberg was appointed. Therefore, McGrogan's "injury" occurred more than six years before he filed the malpractice complaint.
McGrogan's knowledge of Till's alleged fault as a contributing cause of his injury was established no later than March 22, 1991. On that date, McGrogan sent a letter to United States District Court Judge Alfred J. Lechner, Jr. regarding a civil complaint filed by Wayne Township against McGrogan and others. In the letter McGrogan savaged Till.[1] McGrogan stated:

*260 I paid more than $24,000 in attorney's fees to Peter W. Till, Esq., who did little or nothing for me. In fact, Mr. Till refused to permit me to cooperate with the government. If I had cooperated, as I have since done to the best of my ability, I believe that I would not have been indicted.
McGrogan's complaint was filed more than six years after this letter. Consequently, it was not timely filed, even if the six-year limitations period were applicable.

II
We also conclude, as an alternative ground for our affirmance of the judgment, that the two-year limitations period applies. Thus, even if the cause of action accrued when McGrogan was sentenced, the complaint was filed more than two years later.
N.J.S.A. 2A:14-2 provides:
Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued.
In contrast, the six-year statute applies to actions "for trespass to real property, for any tortious injury to real or personal property ... for any tortious injury to the rights of another not stated in section[ ] 2A:14-2... or for recovery upon a contractual claim or liability...." N.J.S.A. 2A:14-1.
The six-year statute has been applied to legal-malpractice actions in which the primary injury is economic. Thus, the six-year statute was applied in Grunwald, supra, involving a real estate transaction. See also Mant v. Gillespie, 189 N.J.Super. 368, 460 A.2d 172 (App.Div.1983) (real estate transaction); Carney v. Finn, 145 N.J.Super. 234, 367 A.2d 458 (App.Div. 1976) (workers' compensation claim); Fuschetti v. Bierman, 128 N.J.Super. 290, 319 A.2d 781 (Law Div.1974) (failure to commence personal injury action). In Carney, supra, we held that the six-year statute applied to an attorney's alleged mishandling of a workers' compensation claim because the attorney's negligence caused "pecuniary loss," not personal injury. 145 N.J.Super. at 236, 367 A.2d 458.
A medical-malpractice action, however, is governed by the two-year period. Lynch v. Rubacky, 85 N.J. 65, 424 A.2d 1169 (1981); Knutsen v. Brown, 93 N.J.Super. 522, 226 A.2d 460 (Law Div. 1966), aff'd, 96 N.J.Super. 229, 232 A.2d 833 (App.Div.1967). The critical difference between legal and medical malpractice, for purposes of applying different limitations periods, is the difference between economic injury and personal injury.
In Montells v. Haynes, 133 N.J. 282, 627 A.2d 654 (1993), the Court expressly recognized that in determining the applicable limitations period "[o]ur focus is on the nature of the injury, not the underlying legal theory of the claim." Id. at 291, 627 A.2d 654. At issue was whether the six-year or two-year statute applied to a claim under New Jersey's Law Against Discrimination (LAD). There, plaintiff relied specifically on language in the six-year statute covering "tortious injury to the rights of another not stated in section 2A:14-2." The Court defined the difference between the two statutes:
The question becomes whether injuries under LAD are more like an "injury to the person" under N.J.S.A. 2A:14-2 or like injuries under N.J.S.A. 2A:14-1, specifically those arising from breach of contract or from "any tortious injury to the rights of another not stated in sections 2A:14-2...." In separating "injury to the person" from "tortious injury to the rights of another," the Legislature essentially distinguished personal injuries involving physical or emotional harm from those involving economic harm. Accordingly, courts have viewed *261 "tortious injury to the rights of another" as applying primarily to actions for economic loss.
[Id. at 291, 627 A.2d 654 (citation omitted).]
In the present case, McGrogan contends that Till's negligence was the proximate cause of McGrogan's indictment and eventual conviction and sentence. We are persuaded that the consequences of Till's alleged malpractice qualify as personal injuries. They include elements of emotional harm, stress, anxiety, embarrassment, and impairment of personal relationships. These consequences are analogous to the injuries suffered by a victim of libel or slander, causes of action governed by a one-year limitations period. N.J.S.A. 2A:14-3. Moreover, incarceration is a personal injury. See Earl v. Winne, 14 N.J. 119, 132, 101 A.2d 535 (1953) (holding that an action for false imprisonment is governed by the two-year limitations period). We find additional support for application of the two-year statute in Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) which held that the limitations period for personal injuries is applicable to all civil rights claims under 42 U.S.C.A. § 1983, though "the § 1983 remedy encompasses a broad range of potential tort analogies, from injuries to property to infringements of individual liberty." Id. at 276-77, 105 S.Ct. at 1947, 85 L.Ed.2d at 266-67. See Cito v. Bridgewater Tp. Police Dep't, 892 F.2d 23, 25 (3rd Cir.1989) (applying two-year statute to civil rights claim under § 1983 and § 1985); cf. Rumbauskas v. Cantor, 138 N.J. 173, 182, 649 A.2d 853 (1994) (applying the two-year limitations statute to an invasion of privacy claim, characterized as "intrusion on seclusion" based on stalkings, surveillance and threats of violence, and explaining that defendant's actions "struck directly at the personhood of plaintiff").
Concededly, a criminal indictment and conviction may generate economic injury. Nevertheless, those consequences are incidental to and flow from the personal injury caused by a criminal prosecution, including disrepute in the community. Most personal injuries, whether from an act of medical malpractice or an automobile collision, also cause economic loss, but that fact does not preclude application of the two-year statute.
Finally, we note that application of the two-year statute is consistent with the rationale underpinning statutes of limitations. They are enacted "to protect against the litigation of stale claims." Grunwald, supra, 131 N.J. at 497, 621 A.2d 459. A claim for legal malpractice in a case more typical than McGrogan's may not accrue until a conviction is overturned on direct appeal or on an application for post-conviction relief. See R. 3:22-1 et seq. A PCR application may be made anytime within five years of a conviction. R. 3:22-12. Applying a six-year limitations period to the malpractice claim could result in a timely filing ten or more years after the act of alleged attorney negligence. As Justice Clifford observed in Grunwald, "[a] system that would permit a plaintiff to commence a malpractice claim fifteen years after an attorney renders allegedly negligent advice is simply unacceptable." Id. at 497, 621 A.2d 459. Application of the two-year statute will mitigate undue delay in the litigation of these claims.

III
As previously indicated, one of the issues we raised sua sponte was whether a convicted person may maintain an action for legal malpractice before the conviction has been reversed or otherwise vacated. In Stevens v. Bispham, 316 Or. 221, 851 P.2d 556 (1993), the Oregon Supreme Court required exoneration as a prerequisite to a malpractice action.
In Stevens, the issue was "at what point does the statute of limitations for legal malpractice begin to run with respect to a lawyer's defense of a client who has been *262 convicted in a criminal case?" Id. at 557. The Supreme Court of Oregon held:
[I]n order for one convicted of a criminal offense to bring an action for professional negligence against that person's criminal defense counsel, the person must, in addition to alleging a duty, its breach, and causation, allege "harm" in that the person has been exonerated of the criminal offense through reversal on direct appeal, through post-conviction relief proceedings, or otherwise.

[Id. at 566.]
The policy reasons underlying the court's holding were thoughtfully articulated. The analysis began with the observation that while the state legislature had given no express directives on the issue, the collective body of Oregon substantive and procedural criminal law established that it is the public policy of this state to treat any person who has been convicted of any criminal offense as validly convicted unless and until the person's conviction has been reversed, whether on appeal or through post-conviction relief, or the person otherwise has been exonerated. Any policy choice that this court might make concerning when a person ... should be deemed to have been harmed by legal malpractice on the part of the person's criminal defense counsel should respect, and not hinder, the valid policy choices already made by the legislature.

[Id. at 561.]
The court explained why it adopted this rule. First, it acknowledged the existence of an expansive body of federal and state constitutional law in the area of ineffective assistance of counsel, which the court determined must be applied before any tort-based theory is explored. Id. at 561-562. Second, the Court acknowledged the special status of a criminal conviction. It remarked:
In our society, no other legal outcome of the trial process is so difficult to obtain. Yet, to allow a person convicted of a criminal offense to sue that person's lawyer without having first overturned the conviction would mean that the courts would be permitting relitigation of a matter that is supposed to be settled: The complaining party is deemed by the law to be guilty. The panoply of protections accorded to the criminally accused (including direct appeal and post-conviction relief) is so inclusive, and the significance of a conviction so important to vindication of the rule of law, that it would appear most unusual to permit a person to prosecute a legal malpractice action premised on some flaw in the process that led to that person's conviction at the same time that the person's conviction remained valid for all other purposes.

[Id. at 562.]
Third, and perhaps most relevant to the present case, the Court observed:
At least one other consideration is pertinent. However a person comes to be convictedwhether by a plea to the charge, through a plea agreement, or after a trial to judge or juryfor the purposes of a case like this one, the person convicted is deemed equally guilty. Many prisoner complaints in this area will relate to the failure of counsel to get a "better deal" for the accused. But many "better deals" will relate to terms of a sentence or of probation. Such complaints would not result in a reversal of a conviction, either outright or for a new trial. It is only in these latter circumstances, however, that a legal malpractice action will be available. Although a plaintiff may wish that he or she had gotten a better deal, we do not consider it appropriate, outside of circumstances where the kind of relief that we have described is available under the post-conviction relief law, to treat a convicted offender as having been caused "harm" in a legally cognizable way by any disposition of that person's case that was legally permissible.

[Id.]
*263 As the survey of law in Stevens, supra, indicates, some jurisdictions have adopted similar requirements, while others have expressly rejected them. Id. at 562-566 (comparing Shaw v. State, Dep't of Admin., PDA, 816 P.2d 1358 (Alaska 1991), appeal after remand, 861 P.2d 566 (Alaska 1993); and Carmel v. Lunney, 70 N.Y.2d 169, 518 N.Y.S.2d 605, 511 N.E.2d 1126 (1987) and Glenn v. Aiken, 409 Mass. 699, 569 N.E.2d 783 (1991) (favoring similar requirements) with Jepson v. Stubbs, 555 S.W.2d 307 (Mo.1977) and Krahn v. Kinney, 43 Ohio St.3d 103, 538 N.E.2d 1058 (1989) (rejecting such requirements)).
Recently, the Indiana Court of Appeals also rejected the rationale of Stevens. In Silvers v. Brodeur, 682 N.E.2d 811 (Ind. App.), transfer denied, 690 N.E.2d 1189 (Ind.1997), the Indiana intermediate appellate court likewise surveyed the range of holdings among the states.
In partially summarizing the concerns of some jurisdictions and in concluding that Indiana would not adopt the "majority" rule requiring exoneration as a prerequisite to bringing a legal malpractice action, the Silvers court explained:
Although supported by compelling policy concerns, the approach taken by many other jurisdictions regarding the statute of limitations for legal malpractice actions does nothing to further the goals of prompt presentation of claims or seasonable notice to defendants. Instead, the majority's approach, which tolls the statute of limitations until the defendant has been exonerated of his underlying conviction, essentially permits lawsuits on the basis of an attorney's negligence for an indefinite period of time. As Justice Unis of the Supreme Court of Oregon noted in his concurring opinion in Stevens:

Under the majority's "no-exoneration/no-harm" rule, claims by convicted persons for legal malpractice may never be stale, because exoneration of the criminal offense through reversal or vacation after one month or after three decades may suddenly cause the claim to accrue. [citation omitted]
Additionally, the approach of tolling the statute of limitations until exoneration imposes a considerable hardship upon criminal defendants.
We also note that an attempt to establish an easy, bright-line test for determining the accrual of the statute of limitations by requiring exoneration fails in its application. In particular, those states which require exoneration do not specify at what point a criminal defendant is exonerated: when he achieves successful post-conviction relief, when he is retried and a different result is achieved, or when he can no longer be retried for the same crime....
In light of these problems, we decline [the] invitation to adopt the approach taken by many other states in Indiana. Instead, we believe that the well-settled discovery rule should govern the timeliness of legal malpractice actions by criminal defendants. Thus, a criminal defendant is required to file his malpractice action within two years of discovering the malpractice.

[Id. at 817-18.]
In the present case, McGrogan emphasizes that while the policy reasons behind Stevens, supra, and its counterparts are generally laudable, his is a case in which defendant allegedly failed to communicate an offer of immunity, which he would have accepted if he was made aware of it and which would have obviated his perceived need to plead guilty. Accordingly, plaintiff contends that application of the Stevens rule would be unfair.
These circumstances were presented in Peeler v. Hughes & Luce, 909 S.W.2d 494 (Tex.1995). There, Peeler pleaded guilty to tax fraud but subsequently sued her defense counsel; one of her allegations was that her attorney failed to tell her that the prosecution had offered her transactional immunity. Id. at 496. Plaintiff's *264 cause of action was dismissed by a lower court, which found that her own conduct was the sole cause of her damages, and that she had not previously sought to withdraw her plea or set aside her conviction. Id. at 496.
The Supreme Court of Texas affirmed the lower court's decision. While it was not altogether unsympathetic to plaintiff's circumstances, the Court stressed the public policy principle "that convicts may not shift the consequences of their crime to a third party" and that plaintiff at no time "even assert[ed] that she did not commit the acts which formed the basis of the matters charged." Id. at 498. The Court also affirmed the lower court's determination that since plaintiff was not exonerated, her illegal activities alone were the "sole proximate and producing causes of her indictment and conviction as a matter of law." Id.
Whether exoneration is a prerequisite to assertion of a claim of legal malpractice is an interesting issue. If it is a prerequisite, then, arguably, the cause of action would not accrue until exoneration. McGrogan, however, does not contend that he did not commit the crime. Therefore, exoneration would not occur in his case and accrual of the cause of action would not be postponed until then. Thus, our determination, for the reasons expressed in sections I and II of this opinion, that his complaint was not timely filed disposes of the case, and we need not decide the exoneration issue.
Affirmed.
NOTES
[1] We note that our opinion repeats one-sided allegations against Till. Because the complaint was dismissed as untimely, the credibility of plaintiff's allegations has not been tested.