722 A.2d 527

VISION MORTGAGE CORPORATION, INC., PLAINTIFF–RESPONDENT, v. PATRICIA J. CHIAPPERINI, INC., AND PATRICIA J. CHIAPPERINI, DEFENDANTS–APPELLANTS.

Argued November 10, 1998—Decided January 25, 1999.

*Jeffrey S. Intravatola* argued the cause for appellants (*Hoagland, Longo, Moran, Dunst & Doukas*, attorneys; *Mr. Intravatola, Michael J. Caccavelli* and *Christopher M. Longo*, on the briefs).

*Christine D. Petruzzell* argued the cause for respondent (*Wilentz, Goldman & Spitzer*, attorneys; *James E. Tonrey, Jr.*, on the briefs).

PER CURIAM.

This appeal primarily concerns an application of the entire controversy doctrine. A subsidiary question concerns when a cause of action for a negligent appraisal of real property accrues. The issues arise in the context of an action by a mortgage company against an appraiser for professional malpractice in failing accurately to estimate the value of real property that would secure mortgage debt.

The facts of the case are more fully set forth in the opinion of the Appellate Division at 307 *N.J.Super.* 48, 704 *A.*2d 97 (App.Div. 1998). In brief, plaintiff Vision Mortgage Company (Vision) had retained the defendants (whom we shall refer to as Chiapperini) to perform real estate appraisals in connection with residential mortgage loans. In 1988, Vision loaned Edwin Nazario $182,000 on the basis of a $280,000 appraisal of property in Jersey City. In 1989, Vision loaned Trevor Willis $367,700 on the basis of a $511,000 appraisal of property in Montclair.

For convenience we omit reference to the role of assignees of the mortgages because the mortgages were assigned "with recourse," meaning that Vision retained the risk of any default on the loans.

Both mortgagors defaulted, Nazario in 1989 and Willis in 1991. Both mortgages were foreclosed. Both foreclosures resulted in deficiencies, in that the proceeds of the foreclosure sales or the value of the security recovered did not equal the loan amounts.

Vision first sued Chiapperini in 1992 alleging that it had negligently failed to value accurately the real property that secured the $367,700 loan to Willis. On June 13, 1995, Vision and Chiapperini settled that suit. Three months later, on August 22, 1995, Vision sued Chiapperini for negligent appraisal of the Nazario property.

Chiapperini sought summary judgment, arguing that Vision's claims were barred by the entire controversy doctrine and the six-year statute of limitations. The trial court ruled that Vision's claims were barred by the entire controversy doctrine. Even if the doctrine did not apply, the trial court found that the claims were barred because the cause of action for malpractice accrued on the date of Nazario's default in April 1989, more than six years before the August 1995 suit.

On appeal, the Appellate Division reversed the summary judgment in favor of defendant. 307 *N.J.Super.* 48, 704 *A.*2d 97. A majority held that because the Nazario and Willis actions did not arise from related transactions, the entire controversy doctrine did not apply. *Id.* at 54, 704 *A.*2d 97. The panel held that plaintiff's cause of action did not accrue until Vision acquired the property following a foreclosure sale. *Id.* at 55, 704 *A.*2d 97. The Appellate Division majority thus concluded that the six-year statute of limitations did not bar this action. *Id.* at 57, 704 *A.*2d 97.

One judge dissented, reasoning that, "under the entire controversy doctrine plaintiff should have combined the claim based on the Nazario appraisal in its action on the Willis appraisal." *Id.* at 57, 704 *A.*2d 97 (D'Annunzio, J., dissenting). In light of that conclusion, Judge D'Annunzio found it unnecessary to address defendant's statute-of-limitations defense. *Id.* at 60, 704 *A.*2d 97 (D'Annunzio, J., dissenting).

Chiapperini appealed as of right with respect to the issue of the entire controversy doctrine and sought certification of the statute-of-limitations issue. We granted the petition. 153 *N.J.* 216, 708 *A.*2d 67 (1998).

## I.

■ We affirm the disposition of the entire controversy issue primarily for the reasons stated by the Appellate Division in its reported opinion. We are satisfied that there is a sufficient difference in the transactional facts not to warrant invocation of the entire controversy doctrine. A court would not have to retry the same issues; the testimony in each of the trials would undoubtedly differ. Had there been a master contract governing appraisal services to be performed by defendant, the argument for application of the entire controversy doctrine would have been stronger. In terms of fairness, Chiapperini knew that it had performed multiple appraisals for Vision. Had it wanted to wrap up all of its affairs in a single package, Chiapperini could have sought a general release when it settled the first case brought by Vision. Thus, concerns of fairness weigh against an application of the entire controversy doctrine. As this Court recently stated: "We have always emphasized that preclusion is a remedy of last resort.... 'Courts must carefully analyze' both fairness to the parties and fairness to the system of judicial administration 'before dismissing *claims* or parties to a suit.'" *Olds v. Donnelly,* 150 *N.J.* 424, 446–47, 696 *A.*2d 633 (1997) (quoting *Gelber v. Zito Partnership,* 147 *N.J.* 561, 565, 688 *A.*2d 1044 (1997)) (emphasis added).

■ We add only this observation. Following our decision in *Olds,* the Civil Practice Committee recommended and we adopted revisions in our rules governing the entire controversy doctrine. One of the Committee's recommendations, embodied in *Rule* 4:5–1(b)(2), was that counsel in an action inform the court of nonparties who should be joined in the action or are subject to joinder. It strikes us that counsel should also inform the court of

other potential claims that it may have against the same party. One of the goals of the entire controversy doctrine is the efficient judicial administration of multiple claims. That is better accomplished when courts possess the facts upon which to base case-management decisions. We request that the Civil Practice Committee consider that issue in the next rule cycle.

## II.

Somewhat more difficult is the second question in the case. Adopting a California rule, the Appellate Division held, "an action by a mortgagee against its appraiser for professional malpractice does not accrue until the loss, if any, of the mortgagee is established by resort to the security through foreclosure or otherwise." 307 *N.J.Super.* at 55, 704 *A.*2d 97 (citing *Slavin v. Trout,* 18 *Cal.App.* 4th 1536, 23 *Cal.Rptr.*2d 219 (Cal.Ct.App.1993)). Presumably, that means the claim accrues after the property has been sold at foreclosure and a deficiency fully established. In some cases, it may be years before a mortgage company is able to complete a foreclosure sale. A rule providing that an action by a mortgagee against an appraiser does not accrue until the mortgagee acquires the property through foreclosure would afford mortgagees an indefinite amount of time within which to bring suit. In essence, the rule would allow the mortgagee to determine when the claim accrues. A mortgagee might even forego a useless foreclosure sale, thus preventing a cause of action from accruing.

On the other hand, we disagree with the trial court's finding that the claim accrued on the date of default. A default does not necessarily establish injury to the mortgagee. A mortgage debtor may default for any number of reasons, such as death, divorce, or a change in job status. Those reasons will have nothing to do with the possibility of injury from negligent appraisal. In short, a default gives a lender no reason to believe that the lender's collateral is undervalued.

The better analysis leads us to conclude that the accrual of a cause of action should not await the sale of the mortgaged

properties, but rather that the cause of action should accrue when the mortgagee knows or has reason to know that its collateral has been impaired or endangered by the negligent appraisal. At that time, the mortgagee knows that it has suffered legal injury. "[P]ursuant to the discovery rule, a professional malpractice claim accrues when: (1) the claimant suffers an injury or damages; and (2) the claimant knows or should know that its injury is attributable to the professional negligent advice." *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla,* 142 *N.J.* 280, 296, 662 *A.*2d 509 (1995) (citing *Grunwald v. Bronkesh,* 131 *N.J.* 483, 494, 621 *A.*2d 459 (1993)).

■ That the damages may be uncertain does not delay accrual. "It is not necessary that all or even the greater part of the damages have to occur before the cause of action arises." *Grunwald, supra,* 131 *N.J.* at 495, 621 *A.*2d 459 (quoting *United States v. Gutterman,* 701 *F.*2d 104, 106 (9th Cir.1983) (applying California law) (internal citations omitted)).

■ Under the *Circle /Grunwald* analysis, we must examine the record to determine when Vision knew or had reason to know that the collateral was impaired. The record establishes that Vision's cause of action concerning the Nazario appraisal accrued on or about December 10, 1991, when it received an appraisal valuing the property at $209,000, an amount $70,000 less than its loan value. At that point, Vision surely became aware that Nazario's mortgage loan was undersecured due to defendant's negligent appraisal, and that Vision had been damaged by defendant's mistake. Nothing else in the record indicates that Vision knew or should have known that the collateral was impaired prior to the December 1991 appraisal. Because Vision commenced this action on June 13, 1995, less than four years after it became aware of the 1991 appraisal, plaintiff brought the action well within the six-year statute of limitations for professional malpractice.

For the reasons stated, the judgment of the Appellate Division is affirmed.

· *For affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.