773 A.2d 726

COMMONWEALTH LAND TITLE INSURANCE COMPANY AND
CITICORP MORTGAGE, INC., PLAINTIFFS–APPELLANTS, v.
ROY E. KURNOS, ESQ., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 25, 2001—Decided June 6, 2001.

Before Judges CARCHMAN and LINTNER.

*Cheryl H. Burstein* argued the cause for appellants (*Williams, Caliri, Miller & Otley,* attorneys; *Ms. Burstein* and *Mark D. Jaffe,* on the brief).

*Matthew M. Collins* argued the cause for respondent (*Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone,* attorneys; *Charles X. Gormally,* of counsel; *Mr. Gormally* and *Jonathan E. Levitt,* on the brief).

The opinion of the court was delivered by

CARCHMAN, J.A.D.

In this legal malpractice appeal, we address the issue of when the six-year statute of limitations runs when monetary damages are allegedly not readily ascertainable at the time the alleged malpractice is discovered. We conclude that where an attorney's negligence resulted in a purported first mortgage ·lien actually being a second mortgage, the limitations period commenced at the

time the negligent conduct was discovered even in the absence of the mortgagors' default as to either mortgage.

These are the uncontested facts. Property owners James Trierweiler and Elizabeth Hurley Trierweiler (the borrowers) retained defendant Roy Kurnos, Esq., to represent them in the refinancing of their home mortgage. The principal amount of the loan was $425,000 and was to be secured by a first mortgage on their residence in Mendham. Plaintiff Citicorp Mortgage, Inc. (the bank) was the lender; plaintiff Commonwealth Land Title Insurance Company (the title company) was to provide title insurance guaranteeing that the bank's mortgage was a first lien on the property. The refinance was to discharge both the first lien of the then mortgagee, Morris County Savings Bank, and a second lien held by Midlantic National Bank (the Midlantic mortgage). The second lien secured a $150,000 home equity line of credit.

Defendant sought a "pay-off" letter from Midlantic and received a response indicating a pay-off figure of $150,122.96 as of July 17, 1990, with a per diem interest charge of $48.79. The pay-off letter also contained the following instructions: "[i]f you wish to close the account, we require a letter from either the customer or the acting attorney." The loan commitment was issued on August 23, 1990, conditioned upon the bank being in a first lien position. Closing took place on September 7, 1990, and defendant subsequently disbursed the mortgage funds satisfying the first mortgage and remitted a check in an amount consistent with the payoff letter to Midlantic. Unfortunately, neither the borrowers nor defendant instructed Midlantic to close the account, and the mortgage securing the home equity loan remained on the record.

After the original first mortgage was cancelled, the Midlantic mortgage moved into first position ahead of the bank's mortgage. Thereafter, the borrowers drew down an additional $150,000 on their still available home equity line of credit.

Within nine months after the mortgage refinance closing, the title company knew of the error. In her June 7, 1991 letter to

defendant, Kathy Esposito, the title company's branch manager, stated:

> It has come to my attention thru a conversation with Doris that the Equity Line Credit Mortgage to Midlantic National Bank recorded in book 2326, page 446 in the amount of $150,000.00 has not been closed out nor postponed to the lien of the new Citicorp mortgage.
>
> As you are aware, this Midlantic mortgage would remain [sic] in first position. It is imperative that this mortgage be discharged or postponed immediately. A paydown of the mortgage is not sufficient to clear this item. In the event [defendants] ha[ve] used any of this equity line in the interim, this must be paid off.
>
> Should you have any questions, please contact me. Your immediate attention to this matter is imperative.

Despite, defendant's efforts, Midlantic was unwilling to subordinate, postpone, or discharge its mortgage. In fact, on August 16, 1991, Midlantic again not only refused to subordinate to the bank's mortgage, but explained why in its correspondence to defendant:

> We have considered your request for a Subordination to Citicorp Mortgage very carefully. At this time, we cannot grant this request because there is insufficient equity in the Trierweiler's [sic] property. This decision was made according to Midlantic National Bank's current underwriting policies and is based on the following formula:

> | | | |
> |---|---:|---|
> | $ | 650,000 | Appraised Value |
> | × | 70% | Loan to Value Ratio |

> | | | |
> |---|---:|---|
> | $ | 455,000 | |
> | − | 425,000 | New Mortgage |
> | $ | 30,000 | Net Equity |

> The Trierweiler's [sic] Capital Line balance is currently $149,265.43.
>
> In order for the bank to consider a Subordination to Citicorp, the following criteria would need to be met.
>
> 1. Mr. and Mrs. Trierweiler would need to pay down their Capital Line account to less than or equal to the $30,000 net equity on their property.
> 2. A letter signed by both Mr. and Mrs. Trierweiler authorizing Midlantic National Bank to decrease their Capital Line to $30,000.
>
> If these conditions are acceptable to you, please notify this office in writing so that we may expedite this matter for you.

Defendant's first inclination was to file an action against Midlantic on the title company's behalf. The title company instructed defendant not to file suit.

Apparently no further action ensued until December 1996, when the borrowers defaulted on the bank's loan, prompting a foreclosure action by the bank. The borrowers' subsequent default on the home equity loan resulted in an additional foreclosure action by Midlantic.[1] To protect the bank's interest, the title company paid Midlantic $154,092.93, the outstanding balance on the first mortgage obligation, and the bank's mortgage assumed a first lien position. The title company took an assignment of the Midlantic mortgage, postponed its mortgage to that of the bank, and assumed a second lien position on the property.

Plaintiffs filed a malpractice action against defendant on September 17, 1998, alleging that defendant failed to secure the bank's first lien position. This was seven years after the title company's June 7, 1991 letter to defendant acknowledging his error in certifying that the bank held a first lien position. Defendant moved for summary judgment, asserting that plaintiffs' action was barred by the six-year limitation period set forth in *N.J.S.A.* 2A:14–1. The motion judge concluded that the statute began running on June 7, 1991, when the title company clearly knew of the error. He found that the malpractice action had not commenced within the statutory period and dismissed the complaint. This appeal followed.

Plaintiffs' argument on appeal is simply stated: the statute does not begin to run until plaintiffs have suffered an injury or damages. They claim that the injury or damage here did not occur until the borrowers defaulted in 1996, and thus, that their action was not barred.

Certain basic principles are immutable in this case. All parties agree that the six-year statute applies to the underlying action. *N.J.S.A.* 2A:14–1; *Grunwald v. Bronkesh*, 131 *N.J.* 483, 487, 621 *A.*2d 459 (1993). Plaintiffs assert that the cause of action did not accrue until an injury or damage attributable to the professional

---

[1] Midlantic's action was filed by PNC Bank, Midlantic's successor.

negligence occurred. *Mystic Isle Dev. Corp. v. Perskie & Neh-mad,* 142 *N.J.* 310, 326, 662 *A.*2d 523 (1995). In fact, mere knowledge of negligence is not sufficient, there must be actual damage. *Olds v. Donnelly,* 150 *N.J.* 424, 437, 696 *A.*2d 633 (1997); *see also Grunwald, supra,* 131 *N.J.* at 494, 621 *A.*2d 459 (noting that the limitation period begins when the client suffers actual damage); *McGrogan v. Till,* 327 *N.J.Super.* 595, 602, 744 *A.*2d 255 (App.Div.2000), *aff'd as modified,* 167 *N.J.* 414, 771 *A.*2d 1187 (2001) (inferring in a legal malpractice action that "damage" occurred when a criminal defendant was indicted and incurred legal fees).

In *Vision Mortgage Corp. v. Patricia J. Chiapperini, Inc.,* 156 *N.J.* 580, 722 *A.*2d 527 (1999), the Supreme Court rejected the argument that the cause of action in a mortgage foreclosure case accrued at the time of default or the sale of the mortgaged premises. "The better analysis leads us to conclude that the accrual of a cause of action should not await the sale of the mortgaged properties, but rather that the cause of action should accrue when the mortgagee knows or has reason to know that its collateral has been impaired or endangered by the negligent appraisal. At that time, the mortgagee knows that it has suffered legal injury." *Id.* at 585–86, 722 *A.*2d 527.

There is no question that plaintiffs knew of defendant's alleged error as evidenced by the exchange of correspondence and discourse which occurred in 1991. We disagree with plaintiffs that no ascertainable damage was recognized until the borrowers' default in 1996. Plaintiffs knew that their bargained-for first position was actually a second position; they further knew or should have known that the borrowers had available to them $150,000 in credit, and a simple equity analysis would have revealed that their security was impaired at the time of the closing. Ironically, this was the exact analysis performed by Midlantic in 1991 to support its refusal to subordinate to the bank's mortgage. Whether plaintiffs knew or did not know of that analysis is irrelevant; the test is what they should have known. *Vision*

disposes of plaintiffs' argument that they could not ascertain their damages until the default. "That the damages may be uncertain does not delay accrual." *Id.* at 586, 722 *A.*2d 527.

If the bank had utilized a different underwriting formula, there would be an even more compelling argument that its damages were not "uncertain." Plaintiffs knew that the bank's $425,000 mortgage was subject to a $150,000 first mortgage. While plaintiffs argue that the collateral, that is the value of the property, may not have been impaired, the bank's lien was impaired. To the extent that a mortgage has value and marketability beyond the value of its collateral, such value is clearly affected by its status as a second lien as opposed to a first lien. Even if the collateral was more than sufficient to satisfy the combined $575,000 mortgage debt, a second mortgagee would be required to advance $150,000 to protect its second position. That exposure and potential detriment, even absent a default, was sufficient to trigger the cause of action.

■ We note the cautionary observation of the Court in *Vision* that the accrual of a cause of action cannot rest with a mortgagee. The title company here guaranteed that the bank's lien would be a first mortgage in first position. Upon learning that the Midlantic mortgage was superior to the bank's lien, the title company was obligated to act on its contractual promise to insure the bank's lien. According to Kurnos' certification, the title company declined to bring an action against Midlantic. Having made that decision, it was then obligated to pay off Midlantic to place its insured in first position. The title company then took an assignment of the Midlantic mortgage. Regular payments by the mortgagors, which apparently followed for a period of seven years, would inure to the title company's benefit as its loss would be reduced by such payments, and it would receive the benefit of earning interest on its money. The failure of the title company to fulfill its obligation to the bank in a timely manner cannot now form the basis of suggesting that absent a default, the statute does not run. In sum, the accrual cannot simply abide a default when a

mortgagee knows full well that its bargained—for position has been altered to the extent that upon reasonable inquiry, it can readily determine that its security has been impaired. Forbearance in the face of obvious and easily ascertainable facts should not be rewarded by tolling the statute of limitations. Such conduct contravenes the underlying policy of statutes of repose, and cannot be countenanced. *Cf. Troum v. Newark Beth Israel Med. Ctr.*, 338 *N.J.Super.* 1, 22–23, 768 *A.*2d 177 (App.Div.2001) (describing the salutary objectives of statutes of limitations).

Finally, we reject plaintiffs' claim for subrogation and indemnification. Our conclusion that the title company's obligation to place the bank in first position accrued when it learned of Kurnos' negligence mandated that the bank seek relief for subrogation and indemnification within the same limitations period as any underlying claim for negligence.

We note that plaintiffs did not plead indemnification in the complaint, but even assuming they were proceeding on that theory, *see Chemical Bank v. Bailey*, 296 *N.J.Super.* 515, 524–25, 687 *A.*2d 316 (App.Div.), *certif. denied*, 150 *N.J.* 28, 695 *A.*2d 671 (1997) (holding that a title company has a right to subrogation or indemnification against an attorney who commits legal malpractice in failing to place a first mortgage ahead of a second mortgage), the statute runs not when the title company determines it will pay under its policy, but when it is responsible to pay. We conclude that the obligation arose when the title company learned that its insured was in second, rather than first position.

We conclude that Judge Cramp properly dismissed plaintiffs' complaint.

Affirmed.