**JEFFREY RAPAPORT M.D., P.A.,
Jeffrey Rapaport, and Amanda
Rapaport, Plaintiff,**

v.

**ROBIN S. WEINGAST & ASSOCIATES,
INC., Robin S. Weingast, Designs for
Finance, Inc., and Capital One, N.A.
as successor to North Fork Bank and
Trust Co., and Pointe Benefit Consultants, LLC., Defendants.**

Civil Action No. 11–CV–
2254 (DMC)(JAD).

United States District Court,
D. New Jersey.

April 30, 2012.

708

Steven Mark Kaplan, Kaplan & Levenson P.C., Englewood Cliffs, NJ, for Plaintiff.

Jura C. Zibas, Wilson Elser, New York, NY, for Defendants.

## OPINION

DENNIS M. CAVANAUGH, District Judge.

This matter comes before the Court upon motions by Defendants Robin S. Weingast & Associates, Inc. and Robin S. Weingast (collectively the "Weingast Defendants")(ECF No. 24), Defendant Designs for Finance, Inc. ("Designs")(ECF No. 27), Defendant Pointe Benefit Consultants, LLC ("Pointe Benefit")(ECF No. 29), and Defendant Capital One, N.A. ("Capitol One")(ECF No. 31) to dismiss Plaintiffs Jeffrey Rapaport M.D., P.A. ("JRMDPA"), Jeffrey Rapaport ("Rapaport"), and Amanda Rapaport's (collectively "Plaintiffs") Complaint in this action pursuant to FED.R.CIV.P. 12(b)(6). Pursuant to FED.R.CIV.P. 78, no oral argument was heard. After considering the submissions of the parties, it is the decision of this Court for the reasons herein expressed that the motions to dismiss submitted by Defendants Designs, Pointe Benefit, and Capital One are **granted** and the motion to dismiss by the Weingast Defendants is **denied.**

## I. BACKGROUND [1]

Plaintiff Jeffrey Rapaport M.D., P.A. ("JRMDPA") is a professional corporation with its principal place of business in Englewood Cliffs, New Jersey. Pls.' Compl. ¶ 1. Plaintiff Jeffrey Rapaport is the sole shareholder of JRMDPA and Plaintiff Amanda Rapaport is his wife. Pls.' Compl. ¶ 4–5.

Defendant Robin Weingast ("Weingast") is the principal owner, operator, and controller of Defendant Robin Weingast & Associates, Inc. ("Weingast Inc."). Pls.' Compl. ¶ 8. Weingast, Inc. is a full service consulting firm, insurance agent, professional advisor and consultant. Pls.' Compl. ¶ 19. According to Plaintiffs' Complaint, Weingast, Inc. holds itself out to be an expert in the field of employee benefits, deferred compensation, insurance, and pension plans, with particular expertise in the use and structuring of Internal Revenue Code ("IRC") § 419 Welfare Benefit Plans ("BETA Plans"). *Id.*

In 1995, Weingast approached Plaintiffs and solicited them to hire Weingast, Inc. to establish a BETA plan for JRMDPA (the "BETA Plan"). Pls.' Compl. ¶ 21. The Plan was to be funded through a life insurance policy geared toward maximizing the cash value of the policy and was intended to defer taxes on a substantial amount of Rapaport's compensation. *Id.* At that time, Weingast allegedly represented to Plaintiffs that she was an expert in the creation of BETA plans, life insurance, and all related tax issues. Pls.' Compl. ¶ 22. Weingast further represented that the BETA Plan in question would provide Rapaport with the benefit of deferring taxes on his compensation by investing before-tax dollars into the insurance policy. Pls.' Compl. ¶ 23. In addition, all growth in the value of the policy would be tax deferred. *Id.* All income taxes would be paid at the time the BETA Plan was terminated and the cash value of the policy withdrawn. *Id.* Weingast further advised Plaintiffs that she would assemble the appropriate team to administer the BETA Plan. Pls.' Compl. ¶ 25.

---

1. The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers. A discussion of the relevant documents that govern the relationships of the parties is also necessary as the documents are integral and explicitly relied upon in Plaintiff's Complaint. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997).

Plaintiffs agreed to establish a BETA plan through Weingast, Inc. Pls.' Compl. ¶ 26. As promised, Weingast assembled a team to administer the Plan. Pls.' Compl. ¶ 25. The team assembled was composed of the remaining Defendants to the instant suit, with Design for Finance ("Design") as the sponsor of the Plan, North Fork Bank (now Capital One) as trustee, Pointe Benefit as the administrator, and Weingast, Inc. as the insurance agent/intermediary, professional tax advisor, third party administrator, and consultant for the BETA plan and the policies of insurance therein. *Id.* Plaintiffs agreed to fund the plan with a Massachusetts Mutual life insurance policy to maximize the cash value of the Plan, which was selected and sold by Weingast. *Id.* In or about December 1995, JRMDPA executed an agreement (the "Adoption Agreement"), which formally established and adopted the Welfare Benefit BETA plan. Pls.' Compl. ¶ 27. JRMDPA subsequently purchased the life insurance policy on which it began to pay premiums. *Id.*

On December 4, 1996, Designs presented JRMDPA with a second adoption agreement ("Second Adoption Agreement") and a "BETA Program Waiver and Representation Agreement" (the "Waiver"). Pls.' Compl. ¶ 28. In relevant part, the Adoption Agreement provided that the employer acknowledged

(1) No legal or tax advice has been given to [the employer] by the Sponsor, Recordkeeper, or Trustee;

(2) The adoption of [the] Plan, and the Plan's related tax consequences, are the responsibility of the Employer and its independent tax and legal advisors; [and] . . .

(8) Neither the Sponsor, the Recordkeeper, nor the Trustee represents, guarantees or promises that any particular tax consequences will result from the Employer's or any Employee's participation in the Plan.

Marasciullo Decl., Ex. D, Adoption Agreement for the BETA Multiple Employer Death Benefit Plan, Dec. 4, 1996, ECF No. 24–1.

Upon receipt of the Adoption Agreement and Waiver, Rapaport contacted Weingast to inquire about the nature and purpose of the documents. Pls.' Compl. ¶ 29. Weingast explained to Rapaport that the Second Adoption Agreement contained certain technical amendments to the Plan which were required to be made, but that the changes would not affect the tax and insurance benefits enjoyed by participants. *Id.* With regard to the Waiver, Weingast explained that it was a only a technical requirement that all BETA Plan participants had to sign, and that participation in the Plan could not continue if the Waiver was not executed. Pls.' Compl. ¶ 30. Importantly, Plaintiffs allege that Weingast advised Plaintiffs that they did not need to seek alternative tax or legal advice because she is one of the nation's foremost experts and professional advisors on Beta Plans, their related tax issues, and insurance sales. *Id.* Weingast further represented that the premiums and growth on the policy remained fully tax deductible. *Id.* Rapaport thereafter executed the Second Adoption Agreement and Waiver and continued to pay premiums on the policy. Pls.' Compl. ¶ 31.

On December 20, 2002, Defendant Pointe Benefit issued a letter to notify Plaintiffs that the Internal Revenue Service (the "IRS") had issued proposed regulations in July 2002 that related to the tax benefits enjoyed by participants in the Beta Plans (the "December 2002 Pointe Benefit Letter"). Marasciullo Decl., Ex. E, Pointe Benefit Letter, Dec. 20, 2002, ECF No. 24–1. The Plan had originally been formed under IRC § 419A(f)(6) and the letter advised participants that, effective January 1, 2003, the Plan would be

recharacterized as a Plan covered under 419(a). *Id.*; Pls.' Compl. ¶ 32. Pointe Benefit went on to explain that the change would "protect [the participants] from any action taken by the IRS relative to the proposed regulations ... while preserving the primary features that were contained in the original BETA plan." Marasciullo Decl., Ex. E, Pointe Benefit Letter, Dec. 20, 2002, ECF No. 24–1. The letter informed the participants that no action was required on their part, and that Pointe Benefit would keep them notified regarding any future changes that may impact their Plan. *Id.* Enclosed with the letter was a more complete description of the changes to the Plan as well as an opinion letter from the Plan Attorney, Steven A. Horowitz. The letter concluded with a statement to participants that "You will want to share this with your tax advisors." *Id.*

After receiving the letter Rapaport again contacted Weingast to inquire whether the letter presented any cause for concern. Pls.' Compl. ¶ 33. Weingast again reassured Plaintiff that there was no reason to worry, that the recharacterization of the plan addressed any of the issues raised by the proposed regulation changes, and advised that Plaintiffs should continue with the Plan. *Id.* Plaintiffs thereafter complied with Weingast's advice and continued to participate in the plan. Pls.' Compl. ¶ 34.

On December 17, 2004, Pointe Benefit issued a second letter to inform plan participants that the proposed regulations noted in the December 2002 Pointe Benefit Letter had now passed and, as a result, plan participants were obligated to execute a third adoption agreement for the Plan (the "Third Adoption Agreement"). Pls.' Compl. ¶ 35. The Third Adoption Agreement included amendments to reflect the re-characterization of the plan. *Id.* Included with the letter was the Third Adoption

Agreement, as well as a "Multiple Welfare Benefit Trust Severance Agreement" dated January 1, 2003 by and between North Fork Bank (now Capitol One), Pointe Benefit, and Designs (the "Severance Agreement"). Fioccola Decl., Ex. F, Multiple Employer Welfare Benefit Trust Severance Agreement, Jan. 1, 2003, ECF No. 31–7. The Severance Agreement purported to sever the Plan from a "multiple employer death benefit plan and trust" to an "individual employer welfare benefit and trust." *Id.* The severance was said to be in the best interests of the covered employers and their participating employees. *Id.* Also included with the letter was a "Beta Individual Employer Welfare Benefit Plan Waiver and Representation Agreement" (the "Second Waiver"). Pls.' Compl. ¶ 36–37. The Second Waiver, signed by both Rapaport and Designs, acknowledged the following regarding the tax implications of the Plan:

(1) The undersigned is not relying on Sponsor or its officers, employees or agents with respect to tax and other economic considerations involved in such participation;

(2) the Recordkeeper and Sponsor make no representations, warranties or guarantees that such contributions are tax deductible to the Participant; and that furthermore, such claims of deductibility may be subject to challenge under Code Section 162, and the regulations thereunder, by the Internal Revenue Service ("IRS");

(3) While every effort has been made to ensure that the Program is in compliance with all applicable tax laws and rules, the Program has not been ruled on by the IRS, and that any income tax deductions taken by the undersigned in connection with participation in the Program may be subject to challenge or disallowance;

(4) The undersigned ... expressly waives, any and all loss, liability, claim, damage and expense whatsoever (including, but not limited to, any and all expenses whatsoever incurred in investigating, preparing or defending against any tax claim or litigation commenced or threatened or any claim whatsoever) arising out of or based upon the Program.[2]

Fioccola Decl., Ex. I, "Beta Individual Employer Welfare Benefit Plan Waiver" and Representation Agreement, Jan. 14, 2005, ECF No. 31–10. Upon receipt of the December 2004 Pointe Benefit letter and the accompanying documents, Rapaport again contacted Weingast to consult her regarding the implication of the documents. Pls.' Compl. ¶ 38. Weingast again explained that the Third Adoption Agreement accomplished certain technical amendments which were required to be made and again reassured Plaintiff that none of the changes would affect the tax and insurance benefits of the Plan. *Id.* With regard to the Second Waiver, Weingast again explained that it was a requirement for all participants in order to continue their participation in the Plan. Pls.' Compl. ¶ 39. Weingast further explained that Rapaport should not be concerned about the Waiver and that she personally reviewed the relevant tax laws and obtained legal opinions to support the tax benefits of the Plan. *Id.* Weingast again advised Plaintiff that he did not need to seek alternative tax or legal advice. *Id.* In the course of the exchange, Rapaport specifically asked Weingast why the Plan needed to be recharacterized and requested reassurance that he shouldn't be concerned about the tax implications of the change. Pls.' Compl. ¶ 40. Weingast allegedly responded that her team had addressed every concern raised in the new IRS regulation and that Plaintiff should not be concerned. Pls.' Compl. ¶ 41. On January 4, 2005, Plaintiffs executed the Third Adoption Agreement and the Second Waiver. Pls.' Compl. ¶ 43.

In late 2005 or early 2006, Rapaport contacted Weingast to inform her that he was unhappy with the performance of the life insurance policy. Pls.' Compl. ¶ 45. Weingast advised Rapaport that he could substitute the policy with a new policy from Jefferson Pilot Financial. *Id.* Rapaport agreed and the Policy was substituted in or around April 2006. Pls.' Compl. ¶ 47; Marasciullo Decl., Ex. I, Jefferson Pilot Financial Acknowledgment, Feb. 8, 2006, ECF No. 24–1 The new policy would increase the death benefit of the policy in exchange for a substantial reduction in its cash value. *Id.*

By Notice of Deficiency dated March 31, 2010, the Rapaports were notified by the IRS that they owed additional taxes, interest, and penalties in the amount of $847,812.55 relating to deductions taken from their income tax returns in 2004, 2005, and 2006 for the premiums paid for the Policy. Pls.' Compl. ¶ 48. JRMDPA was also notified by the IRS by Notice of Deficiency dated March 31, 2010 that it owed additional taxes, interest, and penalties in the amount of $85,094.80, also relating to deductions taken from income tax returns in 2004, 2005, and 2006 for the premiums paid for the Policy. Pls.' Compl. ¶ 49.

On March 11, 2011, Plaintiffs filed the instant suit in New Jersey State Court, Bergen County, Law Division. Marasciullo Decl., Ex. A, Pls.' Compl. Mar. 11, 2011, ECF No. 24–1. On April 20, 2011, the Weingast Defendants, with the consent

---

**2.** The numbered paragraphs do not correspond to any numbered paragraphs in the Second Waiver.

of all other Defendants, removed the matter to the District Court of New Jersey. Notice of Removal, ECF No. 1. Defendants have each separately moved to dismiss the Complaint as against them for failure to state a claim upon which relief may be granted.

## II. LEGAL STANDARD

In deciding a motion under Rule 12(b)(6), the district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 228 (3d Cir.2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "[A] court is] not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Instead, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

"A complaint will survive a motion to dismiss if it contains sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the Defendant is liable for misconduct alleged." *Id.* "Determining whether the allegations in a complaint are 'plausible' is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Young v. Speziale,* No. 07–3129, 2009 WL 3806296, at *3 (D.N.J. Nov. 10, 2009) (quoting *Iqbal,* 129 S.Ct. at 1950). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950.

■ The district court may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of America,* 361 F.3d 217, 222 n. 3 (3d Cir.2004). If a document is "'integral to or explicitly relied upon in the complaint'" it forms the basis of a claim. *Id.* citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426. "The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document." *Id.* By relying on the document to form the basis of a claim, "the plaintiff is on notice that the document will be considered." *Id.* "When allegations contained in a complaint are contradicted by the document it cites, the document controls." *In re PDI Sec. Litig.,* No. 02–0211, 2005 WL 2009892, *21 (D.N.J. Aug. 17, 2005).

## III. DISCUSSION

Defendants each separately move to dismiss on the grounds that Plaintiff has failed to adequately plead a cause of action against them. Defendants raise several similar arguments relating to documents executed by the parties as well as the timeliness of Plaintiffs' Complaint. This Court will first address these preliminary issues raised by all Defendants before

turning to the sufficiency of Plaintiffs' Complaint with respect to each motion to dismiss. Such issues involve the law under which the instant dispute is to be decided, the legal effect of the Waivers executed by Plaintiffs, and the timeliness of Plaintiffs' Complaint.

## A. Applicable Law

This Court notes at the outset that the moving papers of the parties demonstrate a discrepancy regarding whether the laws of New Jersey or New York apply to the instant suit. Plaintiffs maintain that New Jersey law governs all claims, as New Jersey has the most significant relationship with the suit. Defendants are not uniform in their conflict of laws analysis. The Weingast Defendants apply New Jersey law without further conflict of laws discussion, Designs for Finance and Capital One apply New York law pursuant to a choice of law provision included within the aforementioned BETA Plan, and Pointe Benefit applies New York law without further explanation.

This Court finds that a conflict of law analysis is not necessary for the instant motion to dismiss. As will be shown in the discussion below, the result of this motion would be the same under either New York or New Jersey law.

## B. Plaintiffs' Claims are Not Time Barred

■ Defendants each individually argue that Plaintiffs' claims are time barred under either New York or New Jersey law. The parties are in agreement regarding the relevant statutes of limitations that apply to the allegations raised in Plaintiffs Complaint. Under New Jersey law, claims of breach of fiduciary duty and pro-

fessional negligence are subject to a six-year statute of limitations. NJ Stat. § 2A:14–1. Under New York law the statute of limitations for claims of negligence or breach of fiduciary duty for which money damages are sought is three years. *See* N.Y. CPLR § 214; *Kaufman v. Cohen,* 307 A.D.2d 113, 118, 760 N.Y.S.2d 157 (N.Y.App.Div.2003)(applying a three year statute of limitation for claim of breach of fiduciary duty where Plaintiff sought monetary damages and did not raise a claim for equitable relief); citing *Yatter v. William Morris Agency,* 256 A.D.2d 260, 682 N.Y.S.2d 198, 199 (1998); *Whitney Holdings, Ltd. v. Givotovsky,* 988 F.Supp. 732, 741 (S.D.N.Y.1997).

■ The parties differ, however, on the time at which Plaintiffs' claims arose to begin the running of the statute of limitations. Under both New Jersey and New York law, the applicable statute of limitations will commence once a cause of action accrues. *See* NJ Stat. § 2A:14–1; N.Y. CPLR § 203. Under New York law, for purposes of N.Y. CPLR § 214, a cause of action accrues when all of the facts necessary to the cause of action occur such that the party would be entitled to obtain relief in court. Under New Jersey law, a cause of action accrues when "a plaintiff knows or should know the facts underlying [the elements of the claim], not necessarily when a plaintiff learns of the consequences of the facts." *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla,* 142 N.J. 280, 296, 662 A.2d 509 (1995). Therefore, a claim for professional malpractice accrues when: "(1) the claimant suffers an injury or damages; and (2) the claimant knows or should know that its injury is attributable to the professional negligent advice."[3]

3. Professional malpractice arises from the theory of negligence and is essentially the same as a claim of breach of fiduciary duty under the facts of this case. *See Kominsky v. C.B. Planning Services Corp.,* No. L–797–10, 2012 WL 1231883, at *3, n. 2 (N.J.Super.Ct.App.Div. Apr. 13, 2012) (finding breach of fiduciary duty and professional malpractice claims to be essentially the same when broker failed to discuss with plaintiff the availability of a waiver in policies sold by the broker).

*Id.; see also Grunwald v. Bronkesh,* 131 N.J. 483, 494, 621 A.2d 459 (1993); *Mystic Isle Dev. Corp. v. Perskie & Nehmad,* 142 N.J. 310, 326, 662 A.2d 523 (1995). As such, a cause of action may accrue when a party should know of an alleged injury or, more specifically, when that party has "sufficient information of possible wrongdoing to place them on 'inquiry notice' or to excite 'storm warnings' of culpable activity." *See Cetel v. Kirwan Fin. Group, Inc.,* 460 F.3d 494, 507 (3d Cir.2006). A cause of action does not accrue until an injury or damage attributable to the professional negligence occurs. *Commonwealth Land Title Ins. Co. v. Kurnos,* 340 N.J.Super. 25, 29–30, 773 A.2d 726 (2001).

■ This Court finds that, under either New York or New Jersey law, Plaintiffs claims arose when they received the Notices of Deficiency on March 31, 2010. Prior to that time, Plaintiffs accepted Weingast's invitation to rely on her tax advice and reassurances that Plaintiffs need not consult any additional sources. Based on the facts alleged, Plaintiffs have raised a plausible claim that they were reasonable in their reliance on Weingast and should not have known of their injury until receipt of their Notices of Deficiency on March 31, 2010. Plaintiffs filed their Complaint on March 11, 2011, less than one year after the claim arose. Therefore, regardless of whether the three or six year statute of limitations applies, Plaintiffs claims Defendants are timely.

### C. Waivers Executed by Plaintiffs

Plaintiffs attempt to avoid the application of the waivers executed with the Second and Third Adoption Agreements by claiming that such waivers are unenforceable. In support of this theory, Plaintiffs argue that a fiduciary may not hide behind a waiver when it has failed in its strict obligation to make full disclosure of all material facts, and disclose any information that could reasonably bear on the beneficiary's decision. *See Dubbs v. Stribling & Assocs.,* 96 N.Y.2d 337, 341, 728 N.Y.S.2d 413, 752 N.E.2d 850 (N.Y.2001). Plaintiffs also argue that the waivers are unenforceable contracts of adhesion because they were presented to Plaintiffs in the form of standard form agreements on a "take-it-or-leave-it" basis after Plaintiffs had formed and had been funding the Plan. *See Rudbart v. N. Jersey Dist. Water Supply Comm'n,* 127 N.J. 344, 356, 605 A.2d 681 (1992).

■ Plaintiffs have failed to demonstrate that the waivers are unenforceable contracts of adhesion. In determining whether to enforce terms of an alleged contract of adhesion, "courts have looked not only to the take-it-or-leave-it nature or the standardized form of the document but also to the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the "adhering" party, and the public interests affected by the contract." *Rudbart,* 127 N.J. at 356, 605 A.2d 681. Here, Plaintiffs chose to participate in a plan for the purpose of gaining favorable tax treatment. Plaintiffs were required to attest that they were not relying on Defendants for tax advice and would seek their own tax advice as a condition of their participation in the Plan. Plaintiffs were therefore fully aware of their own responsibility regarding the tax consequences of the Plan and cannot now say that they were forced to waive rights that they didn't already possess.

■ This Court therefore finds that the waivers are enforceable to the extent

Here, Plaintiffs' claims of negligence and breach of fiduciary duty are premised upon the Defendant professionals' failure to properly advise Plaintiff of the tax implications of the Plan.

that they were intended.[4] Importantly, the Adoption Agreement and the Waiver both disclaimed responsibility for the *Recordkeeper, Sponsor,* and *Trustee* as well as any of their respective agents, advisors, attorneys or employees with respect to tax and other economic considerations involved in participation in the plan.[5] *See* Marasciullo Decl., Exs. B, D, G, H, & I, ECF No. 24–1 (emphasis added). The Waivers do not expressly provide coverage for Defendant Weingast, nor has it been established that Weingast was an agent of such covered parties in their provision of tax advice to Plaintiffs.[6]

### D. Breach of Fiduciary Duty and Negligence

Because Plaintiffs raise the same causes of action against each Defendant in the instant suit, the Court will first lay out the applicable rule of law for each claim before discussing the sufficiency of the facts alleged with respect to each Defendant.

 To state a claim for breach of fiduciary duty, a party much show (1) a fiduciary duty existed between Plaintiff and Defendant, (2) the defendant breached that duty, and (3) damages as a result of the breach. *See Meisel v. Grunberg,* 651 F.Supp.2d 98, 114 (S.D.N.Y.2009); *F.G. v. MacDonell,* 150 N.J. 550, 563–64, 696 A.2d 697 (1997). Plaintiffs rest their allegations of breach of fiduciary duty on the rule that a fiduciary is strictly obligated to make full disclosure of all material facts, and disclose any information that could reasonably bear on the beneficiary's decision. *See Carlsen v. Masters, Mates & Pilots Pension Plan Trust,* 80 N.J. 334, 341, 403 A.2d 880 (1979); *Blue Chip Emerald LLC v. Allied Partners Inc.,* 299 A.D.2d 278, 750 N.Y.S.2d 291 (N.Y.App.Div.2002)(abrogated on other grounds). However, it is well established that a fiduciary's duties are not limitless, but are circumscribed by the parameters of the fiduciary relationship. *See Flickinger v. Harold C. Brown & Co.,* 947 F.2d 595, 599 (2d Cir.1991); *McKelvey v. Pierce,* 173 N.J. 26, 57, 800 A.2d 840 (2002), citing *F.G. v. MacDonell,* 150 N.J. at 563–64, 696 A.2d 697. Accord-

4. The referenced documents include the BETA Program Waiver and Representation Agreement dated July 16, 1996, Adoption Agreement for the BETA Multiple Employer Death Benefit Plan dated Dec. 4, 1996, Adoption Agreement for the BETA Individual Employer Welfare Benefit Plan dated Jan. 1, 2005, BETA Individual Employer Welfare Benefit Plan Waiver and Representation Agreement dated Jan. 4, 2005, and Jefferson Pilot Financial Acknowledgment for Single Employer § 419(e) Welfare Benefit Plans dated Feb. 8, 2006. This Court notes that the waivers contained in each respective documents do not apply to all parties. However, for the sake of brevity, this Court cites to the documents in summary to demonstrate that the Weingast Defendants were not included within their coverage.

5. Defendants attempt to argue that the Adoption Agreements provide that *"nobody involved with the BETA Plan"* "guarantees or promises that any particular tax consequence will result from the Employer's or any Em-

ployee's participation in the Plan." However, the express language of the Agreement specifies "Neither the Sponsor, the Recordkeeper, nor the Trustee" made such representations. The Weingast Defendants do not fall into any of the three enumerated categories, nor were they signatories to the executed document. *See* Marasciullo Decl., Ex. D 1996 Adoption Agreement for the BETA Multiple Employer Death Benefit Plan, ECF No. 24–1.

6. The cases relied upon by the Weingast Defendants are not to the contrary. In *Daniels v. Robin S. Weingast, et al.,* No. 114942/2009, the Weingast Defendants were specifically named within the forms containing express language removing liability from the parties involved. (Supreme Court, New York, Sept. 9, 2010). In *Cicero v. Wirth,* No. 2327/09, the Court did not address an allegation that Weingast encouraged Plaintiff's reliance on her tax advice. Plaintiff rather alleged that he did not have time to review the documents that he signed.

ingly, a Plaintiff must allege a duty that arises within the scope of the fiduciary relationship and that Defendant breached that particular duty.

■ To state a claim of negligence, a Plaintiff must show (1) the defendant owes plaintiff a legal duty, (2) defendant has breached his duty, (3) resulting in an injury to plaintiff that (4) was caused by defendant's breach. *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 489 N.E.2d 1294 (1985); *Polzo v. County of Essex*, 196 N.J. 569, 584, 960 A.2d 375 (2008).

Accordingly, to state a claim of either negligence or breach of fiduciary duty, a party must show that the Defendant owed Plaintiff a duty of care with respect to the damages alleged. As will be discussed in greater length below, this Court finds that it is only plausible that the Weingast Defendants had a duty to provide Plaintiffs with tax advice such that it could be liable under the facts alleged. For all remaining Defendants, Plaintiff has failed to allege a duty as a matter of law, or that any other Defendant undertook a duty to furnish Plaintiff with tax advice.

### a. Robin S. Weingast & Associates, Inc. and Robin Weingast

The Weingast Defendants move to dismiss Plaintiffs' Complaint on the grounds that Plaintiffs have waived the claims they now seek to raise against Defendants. The Weingast Defendants maintain that such waiver was accomplished when Plaintiffs signed multiple documents in which they (1) acknowledged that the IRS had not ruled on the tax consequences of the BETA Plan and could challenge any deduction, (2) acknowledged that the Weingast Defendants were not giving them tax advice, (3) agreed to consult their own tax advisors, and (4) waived any claims that might arise in connection with their tax liability. Further, Defendants argue that they did not have a duty to provide Plain-

tiff with tax advice, and that Plaintiffs' losses were not caused by the Weingast Defendants but were rather occasioned pursuant to the operation of federal law.

■ This Court will first address the duty owed to Plaintiff by the Weingast Defendants and whether any liability should attach under the facts of this case. According to Plaintiffs' Complaint, the Weingast Defendants acted as Plaintiffs' insurance agent/intermediary, professional tax advisor, third party administrator, and consultant for the BETA plan and the policies of insurance. The Weingast Defendants do not specifically challenge Plaintiff's characterization of their role but rather speak of their role as limited to Plaintiffs' insurance agent. Defendants argue that, as Plaintiff's insurance agent, they only had a duty "to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the area in which his principal seeks to be protected." *See Bates v. Gambino*, 72 N.J. 219, 224–225, 370 A.2d 10 (1977). As such, the Weingast Defendants maintain that they did not have a duty to provide Plaintiffs with tax advice.

■ While Defendants are correct that no duty to provide tax advice is imposed on an insurance broker as a matter of law, it is well settled that a fiduciary duty may arise when "either one of the parties, in entering [a] transaction, expressly reposes a trust and confidence in the other or because of the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence is necessarily implied." *See United Jersey Bank v. Kensey*, 306 N.J.Super. 540, 551, 704 A.2d 38 (App.Div.1997), citing *Berman v. Gurwicz*, 189 N.J.Super. 89, 93, 458 A.2d 1311 (Ch.Div.1981)(internal ellipses omitted). Accordingly, those who represent themselves as experts in a field and invite the

reliance of another party on such expertise may be found to owe that party a duty to do so with the requisite degree of care. *See Big M, Inc. v. Dryden Advisory Group*, No. 08–3567, 2009 WL 1905106, at *24, 2009 U.S. Dist. LEXIS 55423, at *75 (D.N.J. June 29, 2009)(finding a fiduciary duty when accountant held himself out to be an expert on tax matters). This Court finds that, under the facts alleged in Plaintiffs' Complaint, the Weingast Defendants undertook to provide Plaintiffs with tax advice and encouraged and requested their trust and reliance on such counsel. Specifically, Plaintiffs' Complaint states that Robin Weingast repeatedly represented that she was one of the nation's foremost experts and professional advisors on BETA Plans, that she personally reviewed the relevant tax laws and obtained legal opinions to support the tax benefits of the Plan, and discouraged Plaintiffs from seeking outside tax advice. Such representations and invocation of reliance therefore created a fiduciary duty upon which Plaintiffs were entitled to rely.

Having found that the Weingast Defendants owed a duty to Plaintiffs, this Court next turns to Defendants assertions that Plaintiffs waived their ability to raise any claims attached to their tax liability against Defendants. Defendants support their theory of waiver based upon the aforementioned documents that were executed by Plaintiffs in the course of their acceptance and continuation of the BETA plan. Defendants argue that pursuant to such documents, Plaintiffs effectively waived their right to rely on any tax advice provided by Defendants and were placed on notice that the IRS could potentially challenge the deductions made for contributions to the Plan.

▬ This Court has already ruled that the Weingast Defendants cannot avail themselves of the protection of the waivers executed pursuant to the adoption of the BETA Plan. Defendants also seek the protection of the Disclosure and Acknowledgment executed by Rapaport when he purchased the Mass Mutual Life Insurance Policy (the "Mass Mutual Disclosure"). In relevant part, the Mass Mutual Disclosure provided the following

By accepting applications from the trustee of the Plan or by agreeing to issue any policy to the Plan, *Mass Mutual* makes no representations to the Employer or to any of its employees or representatives concerning the federal and state tax consequences of participation in the plan. No director, officer, employee, agent, General Agent or other person has authority *on behalf of Mass Mutual* to provide the Plan, the Employer or any of Employer's employees with any legal or tax advice concerning participation in the Plan or the termination of participation in the Plan.

Marasciullo Decl., Ex C., Massachusetts Mutual Life Insurance Company Disclosure and Acknowledgment, ECF No. 24–1. (emphasis added). In addition to claiming coverage under the express language of the Mass Mutual Disclosure, Defendants argue that by executing the Disclosure, Rapaport acknowledged that he obtained advice from independent professionals regarding the tax consequences of the BETA Plan. This Court finds, however, that the Mass Mutual Disclosure applies to Mass Mutual only and its agents acting on its behalf. The alleged facts do not support, nor do Defendants demonstrate, that they were working on Mass Mutual's behalf when they undertook to assure Plaintiffs that outside tax advice was not necessary. The Weingast Defendants can therefore not avail themselves of the protection of the Mass Mutual waiver.

▬ The Weingast Defendants also seek to rely on the representations made within the documents executed to imple-

ment the BETA Plan to support their theory that Plaintiffs were on notice of the potential for adverse tax results. Defendants maintain that such documents clearly disclaimed any representations regarding the tax consequences of the Plan, and that Plaintiffs were fully aware that Defendants did not promise any particular tax result. However, as previously discussed, Plaintiffs' Complaint demonstrates that regardless of the representations made within the documents, Weingast plausibly assumed a duty to provide Plaintiffs with tax advice when she discouraged Plaintiffs from consulting outside sources and induced them to rely on her representations concerning the Plan. Such actions could effectively give rise to an independent duty to advise, regardless of the language of the documents.

█ Finally, the Weingast Defendants argue that regardless of whether this Court finds a breach of fiduciary duty, that Plaintiffs damages are not recoverable as they were not proximately caused by any conduct attributable to the Defendants. This Court finds, however, that it is plausible that Plaintiffs would not have continued their participation in the Plan, nor taken the deductions on their tax returns, absent the reassurances provides by Weingast. Further, it is plausible that Plaintiffs would have consulted outside tax advice had Weingast not encouraged against it. Accordingly, this Court finds that to the extent the representations made by Weingast induced Plaintiffs to continue their participation in the Plan and not seek outside tax advice, such acts are or could be a proximate cause of Plaintiffs' damages.

To the extent that Plaintiffs' allegations against the Weingast Defendants are true, Plaintiffs have stated a plausible grounds for relief that the Weingast Defendants assumed a duty to provide Plaintiffs with tax advice and breached that duty result-

ing in unexpected tax liability on the part of Plaintiffs. Accordingly, the Weingast Defendants' motion to dismiss must be denied.

### b. Designs for Finance, Inc.

Designs for Finance moves to dismiss Plaintiffs' Complaint as it applies to them on the grounds that Plaintiffs' claims (1) are barred by the applicable statute of limitations, (2) fail to meet the most elementary pleading requirements, (3) fail to allege a misleading statement or omission by Designs, (4) fail to allege the requisite duty of care for a claim sounding in negligence or negligent misrepresentation, and (5) have been expressly waived by Plaintiffs.

█ Plaintiffs' claims against Designs are fatal because Plaintiffs have failed to demonstrate that Designs owed Plaintiffs a duty to provide them with tax advice. Plaintiffs allege that Designs for Finance, as sponsor of the BETA Plan, (i) undertook a duty to provide advice, products and services to Plaintiffs in connection with Plaintiffs' adoption of the BETA Plan, (ii) provided continuous representations to Plaintiffs regarding the viability and tax deductibility of the BETA Plan, namely the three Adoption Agreements and the Trust Severance Agreement, and (iii) provided an opinion letter to Plaintiffs authored by Designs for Finance's attorney in which they opined that "Tax Return disclosure is not required by BETA Plan participants." Plaintiffs maintain that Designs breached its duty of care by failing to advise Plaintiffs that the IRS had made clear to Defendants its intention to disallow the deductions taken in connection with the BETA Plans.

Plaintiffs fail, however, to adequately demonstrate that Designs for Finance owed Plaintiffs a duty to disclose such information. As previously discussed, the Adoption documents referenced by Plain-

tiffs specifically disclaim any promises regarding the tax implications of the Plan. Designs was enlisted as the sponsor for the BETA Plan, a position which has not been alleged to carry with it an affirmative duty to provide tax advice. Further, Plaintiffs have not alleged a single fact to demonstrate that Designs undertook to induce Plaintiffs' reliance. The statements made by Weingast cannot be attributed to Designs merely because it acted as sponsor on the team compiled by Weingast to administer the Plan. Accordingly, Plaintiffs have failed to allege that Designs owed Plaintiffs a duty of care regarding the tax consequences of the Plan and Plaintiffs' claims against Designs must be dismissed.

### c. Capital One, N.A. [7]

■ Capital One moves to dismiss Plaintiffs' Complaint as against them on the grounds that it cannot be held liable for any tax-related losses incurred by Plaintiffs as it did not have a duty to furnish Plaintiffs with tax advice. Specifically, Capitol One argues that it served the limited role of directed trustee for the Plan, pursuant to which it performed certain delineated tasks associated with its position. Such duties included making payment of benefits upon death of the insured when directed by the record keeper and maintaining accounts and subaccounts for the financial management of the Plan. According to Capitol One, such duties did not involve the marketing or sale of the Plan or the communication to

participants or employers about any tax consequences of enrollment.

Plaintiffs have failed to allege to the contrary or identified any legal duty owed by Capitol One to provide Plaintiffs with tax advice. Moreover, as previously discussed, Plaintiffs have failed to allege any conduct on the part of Capital One by which it assumed a duty beyond that of its limited role as directed trustee. Finally, to the extent that Plaintiffs allege that Capitol One owed a duty pursuant to their participation in the Plan, Plaintiffs effectively waived their rights to pursue such claims through execution of the BETA Plan Adoption documents and waivers. Accordingly, Plaintiffs have failed to allege a duty on the part of Capitol One to provide Plaintiffs with tax advice. Capitol One can therefore not be held liable to Plaintiffs for their tax liability and their motion to dismiss must be granted.

### d. Pointe Benefit Consultants, LLC

■ Pointe Benefit moves to dismiss Plaintiffs' Complaint on the grounds that Pointe Benefit never assumed any responsibilities or duties regarding the tax consequences of the Plan and can therefore not be held liable for a breach of a non-existent duty. Rather, Pointe Benefit maintains that its duties were purely administrative and could not give rise to responsibility for any of Plaintiffs' damages arising from their tax liability. Finally, Pointe Benefit argues that Plaintiffs spe-

---

**7.** Capital One also contends that to the extent that Plaintiffs' claim Capitol One has breached its duty as the directed trustee, such claims are governed and preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). Because this Court finds that Plaintiffs' allegations are limited to Defendants' failure to properly advise Plaintiffs of the tax implications of the BETA Plan, which are not among the duties of Capitol One as directed trustee, this Court does not address Capitol One's arguments regarding Plaintiffs'

failure to raise the claims against them under ERISA. This Court notes Plaintiffs' request for leave to amend their Complaint to appropriately allege claims against Capitol One under ERISA. Having found that Capitol One did not owe Plaintiffs a duty to provide tax advice, to the extent that Plaintiffs can identify a duty actually owed by Capitol One that was breached, Plaintiffs may amend their Complaint to include such claims under ERISA.

cifically waived and disclaimed any reliance on Pointe Benefit for tax advice.

Pointe Benefit notes that the only facts alleged that are attributable to it are the transmissions to JRMDPA of the 2002 and 2004 letters. As previously discussed, the substance of the letters alerted Plan participants of recent developments in the tax codes and noted the changes that had been made to the Plan in an attempt to preserve the benefits to participants. While the letters provided analysis and opinion regarding the tax implications of the Plan, they did not encourage participants to forego their acknowledged duty to seek outside tax counsel. In fact, the December 20, 2002 letter expressly stated that Participants would "want to share [the enclosed material] with [their] tax advisors." Marasciullo Decl. Ex. E, Pointe Benefit Letter, Dec. 20, 2002, ECF No. 24–1. The letters therefore sought to provide participants with the information and opinions to enable them to comply with their own duty to seek outside tax advice. Therefore, Plaintiffs have failed to allege that Pointe Benefit had an existing duty to provide Plaintiffs with tax advice, nor assumed one pursuant to the circulation of the aforementioned letters. Accordingly, Pointe Benefit cannot be liable for Plaintiffs' tax liability and Plaintiffs' Complaint as against Pointe Benefit must be dismissed for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

Plaintiffs have therefore failed to allege sufficient facts to support a cause of action against Defendants Designs for Finance, Capitol One, N.A., or Pointe Benefit Consultants, and their respective motions to dismiss must therefore be **granted.** Having found that Plaintiffs have alleged sufficient facts to support a cause of action against the Weingast Defendants, the Weingast Defendants' motion to dismiss is **denied.**

